## COURT OF APPEALS.
### March 13, 1906.

# THE PEOPLE *v.* JACOB HUTER, alias MICHAEL BRUSCH.

### (184 N. Y. 237.)

1. MURDER—ERRONEOUS INSTRUCTIONS AS TO KILLING AFTER THE COMMISSION OF A BURGLARY HAD CEASED—PENAL CODE, § 183.

Where it appears upon the trial of a defendant indicted for murder in in the first degree for killing a police officer, who was attempting to arrest him, that defendant, while attempting to commit a burglary was discovered by a private watchman; that, abandoning the property which he had stolen, he ran from the building pursued by the watchman until they were seen by a policeman who took up the pursuit, calling upon defendant to stop or he would shoot; that after following him for about three hundred feet the policeman had so gained upon the defendant that he was but a few feet distant from him when the latter suddenly drew his revolver and shot the policeman, producing a wound from which he died, it is reversible error to instruct the jury that in case the defendant did not intend to kill the policeman and that the killing was without premeditation, yet if they found that he fired the shot at the policeman after he had attempted to burglarize or had burglarized the premises described in the indictment and was attempting to escape therefrom, then the verdict ought to be for murder in the first degree; since, at the time of the killing the defendant had· ceased to be engaged in the commission of a burglary. (Penal Code, § 183.)

2. MURDER AS IN THE COMMISSION OF A FELONY—PENAL CODE, § 218, SUBD. 5.

Nor is a conviction for murder in the first degree, as in the commission of a felony, warranted by the fact that at the time of the killing the defendant was engaged in the commission of another felony, *i. e.*, an assault upon an officer to prevent or resist the apprehension of himself (Penal Code, § 218, subd. 5); since the assault being the gist of the offense becomes a constituent part of and is merged in the homicide, and cannot be regarded as a separate and independent felony, which although committed " without a design to effect death," would bring the case within the statute.

APPEAL from a judgment of the Court of General Sessions of the Peace in and for the county of New York, rendered

May 20, 1904, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Meyer Levy* and *Samuel Meyers* for appellant. The court committed reversible error in its charge to the jury. (Penal Code, § 183, subd. 1; *People* v. *Barberi,* 149 N. Y. 256; *People* v. *Sullivan,* 173 N. Y. 122; *People* v. *Young,* 40 Misc. Rep. 256.)

*William Travers Jerome, District Attorney* (*Howard. S Gans* of counsel), for respondent. The defendant did not cease to be engaged in the commission of a felony simply because he had left the premises in which the felony was being committed. (2 Hawkins Pleas of the Crown, ch. 46, § 197, subd. 10; *People* v. *Conroy,* 97 N. Y. 62; *People v. Willett,* 102 N. Y. 251; *People* v. *Jackson,* 182 N. Y. 66; *People* v. *Sullivan,* 173 N. Y. 122; *People* v. *Dolan,* 64 N. Y. 485; *People* v. *Meyer,* 162 N. Y. 357; *Bissot* v. *State,* 53 Ind. 408; *State* v. *Brown,* 7 Ore. 186.)

HAIGHT, J.    Between four and five o'clock on the morning of March 20th, 1905, the defendant broke into the bake-shop of Paul Scheel, located in the basement of premises No. 901 Third avenue, between Fifty-fourth and Fifty-fifth streets in the city of New York. At the time, he had a horse and wagon, stationed in front of the premises, in the care of one Joseph Pesce. He had removed from the bake-shop a crate of eggs and placed it in the wagon, and had returned to the shop to get another crate, when he was discovered by a private watchman. The defendant, on discovery, ran out of the premises and told Pesce to run, and they both abandoned the property stolen as well as the horse and wagon, and ran northwardly along the east side of Third avenue to the corner of Fifty-fifth street, pursued by the watchman. The watchman had a night stick,

and as he started to pursue the defendant he called for help, sounding his stick upon the walk, and then seeing Police Officer Enright upon the opposite corner of Fifty-fifth street, called to him to arrest the burglar. At the corner of Third avenue and Fifty-fifth street the defendant and Pesce separated, Pesce going westerly along Fifty-fifth street, while the defendant ran easterly. But by this time Police Officer Enright and a private citizen named Felix Stegman took up the pursuit of the defendant, the policeman calling upon him to stop or he would shoot. After running about three hundred feet upon Fifty-fifth street the policeman had so gained upon the defendant that he was but a few feet distant from him when the defendant suddenly drew his revolver and shot the policeman, producing a wound from which he died within a few hours.

In submitting the case to the jury the trial judge called the attention of the jurors to the definition of murder in the first degree, and after instructing them that in case they found that it was the deliberate and premeditated design of the defendant to kill Officer Enright in shooting him in the manner described that it constituted murder in the first degree; but that in case the defendant did not intend to kill Officer Enright, and that the killing was without premeditation or deliberation, yet if the jurors find that he fired the shot at Enright which proved fatal after he had attempted to or had burglarized the premises of Scheel and was attempting to escape from the premises in the manner described by the witnesses, then their verdict ought to be for murder in the first degree. The defendant's counsel took an exception to the instruction of the court with reference to their right to convict if they found that the killing took place while he was engaged in the commission of a felony. This presents the only question which we are called upon to view.

Under the provisions of section 183 of the Penal Code it is murder in the first degree if the killing of a person is not excusable or justifiable when committed from a deliberate and

premeditated design to effect the death of the person killed, or of another; or without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise. The evidence in the case amply warranted the trial court in submitting to the jury the question of the defendant's guilt under the first subdivision of the section referred to; for, it distinctly appears that before the defendant undertook the burglary upon Scheel's premises he provided himself with a loaded revolver and carried it upon his person. It was not an implement which would aid him in breaking into the premises, or in securing the property therein. The only use to which he could have well devoted it was to aid him in escaping in case he was discovered, and it is apparent that that was the use for which he designed it. I think, therefore, that the jury, under the circumstances of this case, would have been justified in finding the deliberate and premeditated design of the defendant to effect the death of any person who should attempt to prevent his escape from the premises in which the burglary was committed, and, in so far as the court charged upon this provision of the Code, no question is now raised as to its correctness. (*People* v. *Sullivan,* 173 N. Y. 122; 17 N. Y. Crim 180.) But, as we have seen, the trial court also submitted another provision of the Code to the jury, and instructed them to determine whether or not the defendant was guilty under that provision. The defendant had committed a burglary, and if the death of Enright had been caused by him while engaged in the commission of that crime it would, undoubtedly, have been murder in the first degree; but, as we have seen, after he was discovered by the watchman he immediately ran from the premises, abandoning all of the property which he had stolen, and attempted to escape arrest. It is true that he was immediately pursued by the watchman and by Officer Enright, but we incline to the view that this did not operate to continue the burglary after the de-

fendant had abandoned the property that he undertook to carry away and had escaped from the premises burglarized. In all of the cases to which our attention has been called, in which persons have been convicted of murder in the first degree by reason of the killing of a person while the accused was engaged in the commission of a burglary, the killing took place upon the premises.

In the case of *People* v. *Meyer* (162 N. Y. 357; 14 N. Y. Crim. 487,) the defendant had broken into a church and had taken away the money from the poor box. His presence in the church was made known through an electric appliance connected with the box, which gave notice to an adjoining building. He was immediately sought for by a policeman and others, and on discovering their search he retreated through the church, out of a door at the rear of the altar into an alleyway which led to a school building which was used in connection with the church. The policeman followed him into the schoolroom and there was shot and killed, after which the defendant broke out one of the windows and jumped to the street. In that case it was held that the defendant was properly convicted of the killing while engaged in the commission of a burglary. But the act, as we have seen, was committed while he was still upon the property in one of the adjacent buildings and before he had broken out on to the street. He was, therefore, still engaged in the burglary.

In the case of *Dolan* v. *People* (64 N. Y. 485, 487) EARL, J., in delivering the opinion of the court, says: " If a burglar break into a dwelling house burglariously, with the intent to steal, the offense is doubtless complete before he leaves the building, but he may be said to be engaged in the commission of the crime until he leaves the building with his plunder; and if, while there engaged in securing his plunder, or in any way or in any of the acts immediately connected with his crime, he kills any one resisting him, he is guilty of murder

under the statute." We, consequently, conclude that at the time of the killing of Enright he had ceased to be engaged in the commission of a burglary.

The trial court, as we have seen, instructed the jury that if they found that Officer Enright was killed by the defendant while attempting to escape from the premises of Scheel in the manner described by the witnesses, that then their verdict might be for murder in the first degree. The defendant had committed a burglary. He had been discovered in the act. He was pursued by the watchman and by the policeman. He, therefore, knew that Officer Enright had the right to arrest him and when he found that he was about to be overtaken he drew his revolver and fired at the officer. By so doing he not only resisted arrest, but he committed another felony under section 218, subdivision 5, of the Penal Code, which provides that a person who assaults another to prevent or resist the execution of any lawful process or mandate of any court *or officer, or the lawful apprehension or detention of himself,* is an assault in the second degree. Such an assault is made a felony and is punishable by imprisonment for not exceeding five years. The trial judge, in his charge, did not specifically call the attention of the jurors to this provision of the Code, or charge that the defendant might be convicted thereunder. Possibly he had in mind, ·but we think he did not so express himself with reference thereto as to call upon the jurors to determine the question of the defendant's guilt or innocence thereunder. But, inasmuch as we have concluded to order a new trial, in which the question will doubtless be raised, we have concluded to consider the force and effect of the provision as bearing upon the charge.

Assuming for the purpose of the argument that the defendant in firing the shot did not intend to kill, but only intended to frighten or so wound the officer as to prevent his effecting the defendant's arrest, still, we have the fact that the shot caused the death of the officer. The killing, therefore, was

done by the defendant while he was actually engaged in the commission of a felony. But, notwithstanding this, a much mooted question arises in our minds as to whether the felony in which he was engaged at the time of the killing is merged in and became a part of the greater offense.

A person who attempts or engages in the commission of a felony, is not only chargeable with express malice, but also with being perversely wicked, evincing a depraved mind and a disregard of human life, and if, while so engaged, he causes the death of a person, although unintentional, the legislature has seen fit to enlarge the crime and make it murder in the first decree, so that, if a person engaged in the commission of a rape and in order to accomplish the act resorts to violence, from which death is unintentionally produced and which would be only manslaughter were it not for the malice, wickedness and intent to rape, yet by reason thereof it is made murder in the first degree. (*Buel* v. *People,* 78 N. Y. 492.) The same is true with reference to the unintentional killing of a person while engaged in the commission of a robbery, a burglary or an attempt to escape from imprisonment. There may be no intent to kill, but the violence having been perpetrated while engaged in the robbery, burglary or attempt to escape imprisonment, it is murder in the first degree. (*Cox* v. *People,* 80 N. Y. 500; *People* v. *Flanigan,* 174 N. Y. 356; 17 N. Y. Crim. 300; *People* v. *Johnson,* 110 N. Y. 134.) On the other hand, it has been held, where the defendant seized a car hook and struck a person over the head on alighting from a street car, thus crushing his skull, which resulted in death, that the assault and battery was merged in the crime of murder and that the request to charge that the act was done in the commission of a felony was properly refused. (*Foster* v. *People,* 50 N. Y. 598. See, also, *People* v. *Rector,* 19 Wend. 569, and *People* v. *Butler,* 3 Parker Cr. R. 377.) In order, therefore to constitute murder in the first degree by the unintentional killing of another while

engaged in the commission of a felony, we think that while the violence may constitute a part of the homicide, yet the other elements constituting the felony in which he is engaged must be so distinct from that of the homicide as not to be an ingredient' of the homicide, indictable therewith or convictable thereunder. (*Buel* v. *People*, 18 Hun, 487, 493; affirmed, 78 N. Y. *supra*.) Was the assault, therefore, in this case upon the officer a separate and independent felony from that of the homicide, or did it form a part of and become the chief ingredient of that crime? Under the provisions of the Penal Code, to which we have called attention, it is provided that a person who assaults an officer to prevent or resist the lawful apprehension of himself commits a felony. A person may prevent an arrest by hiding; he may resist in various ways without assaulting or using violence. It is apparent, therefore, that the *gist* of the óffense is the assault and when it is by violence inflicting an injury to the person so assaulted, resulting in death, the act becomes a constituent part of the homicide and is merged in the charge therefor. It does not follow, however, that in the other felonies, in order to bring the case within the statute defining murder, the act which caused death must be a different one from that done in the commission of the collateral felony. By the same act one may commit two crimes, and to constitute murder in the first degree, as in the commission of a felony, it is not necessary that there should be an act collateral to or independent of that which causes the death; but if the act causing the death be committed with a collateral and independent felonious design it is sufficient; thus, if the violence used to commit a rape or a robbery results in death the case is plainly within the statute, and so this court has held in the cases above referred to. But as to the felony under consideration we think it was merged in the homicide.

The judgment and conviction should be reversed and a new trial granted.

CULLEN, Ch. J., WERNER, WILLARD BARTLET and HISCOCK, JJ., concur; O'BRIEN. and VANN, JJ., concur, except as to the point last discussed in the opinion, as to which they express no opinion.

Judgment of conviction reversed, etc.