Jasen, J.
(dissenting). Defendant Melvin Murray was convicted, after a jury trial, of felony murder, manslaughter in the first degree and the felonious possession of a weapon. The conviction was predicated solely upon defendant’s admissions to the police that he fatally stabbed Donald Carney when Carney resisted defendant’s attempt to rob him. The Appellate Division unanimously affirmed the judgment of conviction in a brief entry and a Judge of this court granted defendant leave for further appeal.
*336 The principal issue before us is whether a conviction for felony murder may stand though the evidence is legally insufficient to support a conviction for the underlying predicate felony. I would hold that it cannot and two of my brethren share my view. Three other members of the court take the opposite view. The seventh member of the court takes the position that the issue need not be resolved to decide this case since there is sufficient corroboration to sustain this conviction for felony murder. The division in the court today, unfortunately, leaves the question of law in limbo. The policy of this State that no person be convicted solely upon his own admission or confession requires that, where a defendant confesses to a felony murder, the prosecution must produce corroborating evidence of both the felony and the murder. Here, adequate corroboration of the underlying felony was not presented and, therefore, the defendant’s conviction for felony murder cannot stand.
In the early morning hours of August 5, 1972, two Mount Vernon police officers assigned to the Emergency Command Unit were on a routine patrol in the vicinity of Seventh Avenue and Third Street. A passing motorist hailed the patrol car and, through an open window, shouted that there was a man lying in the street between Seventh and Eighth Avenues. The officers turned the corner and found a man lying face down in a pool of blood in front of 59 West Third Street, a few feet away from an unoccupied automobile. The police found part of a broken denture, some particles of food and food packaging, both directly underneath the vehicle as well as on the driver’s seat. There was a considerable amount of blood on both the interior and exterior of the car. The injured man, still bleeding from a chest wound, was taken to the emergency room of Mount Vernon Hospital where, shortly after arrival, he died. A brief search of the body did not produce a wallet or other identification. Each of the responding officers reported that they did not find a wallet on the deceased’s person. At some point, however, the wallet must have been recovered since the widow testified that the police later returned her husband’s wallet, with identification papers and some currency still inside. The police did find an out-of-State vehicle title certificate, listing the owner as Donald Carney, in the glove compartment of the automobile. Mrs. Carney, a resident of New Rochelle, was summoned to identify the body.
The police commenced their investigation by taking several *337 carloads of bystanders down to police headquarters for questioning. The questioning and a search and examination of the vicinity failed to produce any leads. At approximately 10:00 a.m., the police received an anonymous telephone call which caused them to commence a search "for a man whose name we knew as Melvin”. The officers "went out and picked up several persons we knew and we talked with informants and found another person by the name of Melvin and the only one we couldn’t locate was a Melvin Murray at 156 South 13th Avenue. We had gone to that address, we spoke to a few people about him. Nobody had seen him. And then we returned to headquarters.” In the afternoon, the police received a telephone call from Gladys Murray, the defendant’s mother, inquiring whether the police were looking for her son. She told the police that she had not seen her son since the previous day but would tell him that the police were looking for him.
Later that evening, at approximately 6:15 p.m., the defendant and a woman entered the office of the Detective Division of the Police Department. The defendant asked the desk officer whether there was a warrant out for his arrest. After a check of the records, the officer asked the defendant "if that was the real reason he had come in.” The defendant replied negatively, "it was about the thing on Third Street”. The defendant was brought into an interview room and was given the standard preinterrogation warnings. The defendant then stated "that he had gotten into a fight and that he had stabbed him.” The defendant was immediately booked and the detective assigned to the case, Detective Tetro, was summoned back to headquarters. Detective Tetro repeated the standard preinterrogation warnings and obtained a more complete statement. The defendant told Tetro that as he was walking past 57 West Third Street, he noticed a man slumped over the steering wheel of a car. After walking to the corner, defendant decided to "take the man off’ and returned to the car. The passenger-side door would not open and knocks on the window failed to arouse the driver. He walked over to the driver’s side, opened the door, and woke the driver up. After defendant demanded money, the driver turned in his seat and kicked the defendant, knocking him to the ground. After an exchange of punches, defendant took a knife from his pocket and stabbed the driver. The defendant fled the scene, dropping the knife in the backyard of the building at 57 West Third Street. Defend *338 ant went to a friend’s home where he changed his shirt. After taking the statement, Detective Tetro and other officers brought the defendant to the scene of the crime. A search of the area described by defendant failed to turn up the knife. A stop at the friend’s home produced a shirt without blood on it that "appeared to be new and clean”, this despite the extensive bleeding of the deceased resulting from his chést wound.
The defendant was indicted for murder, felony murder, two counts of attempted robbery in the first degree, attempted grand larceny in the third degree, and felonious possession of a weapon. At the close of the People’s case, the court granted motions to dismiss both attempted robbery counts and the attempted grand larceny count. At trial the People relied upon the admissions of the defendant and medical testimony indicated that Carney had died of a stab wound in the chest. Defendant testified that he owed Carney, known to him as "Tee”, a sum of money and, after leaving a party, he met Carney by coincidence in front of 70 West Third Street. After defendant told Carney that he would have to wait for his money, Carney struck the defendant. The defendant was getting the better of the ensuing fight and Carney reached into a pocket and pulled out a knife. The defendant grabbed Carney’s arm and the men struggled for the knife. After a while, Carney ceased struggling, the defendant backed away, and the knife fell into the street. When Carney did not respond to a question, defendant became scared and ran away.
It is plain from a review of the evidence that the People’s case rested entirely upon the defendant’s admissions, coupled with the corpus delicti, a body bearing the tokens of a criminal assault. In our view, there was no corroboration at all of the attempted robbery confessed and that the robbery-related charges were properly dismissed. The reliance of four members of the court on the indicia of a physical altercation and the absence of a wallet on deceased’s body for corroboration is misplaced. Defendant concedes that there was an altercation, only he contends, as brought out during the trial, that the brawl was induced by deceased and that his response was prompted by a legitimate need for self-defense. Thus, the physical signs of a struggle are as "corroborative” of defendant’s trial testimony as they might be of his confession and, thus, lack any probative value at all. The absence of a billfold is an obvious makeweight. The body of the deceased remained in the street for a considerable period of time before it was *339 discovered and when the police arrived, there were a number of bystanders in the immediate vicinity. Any one of these persons, or any other individual who happened along, could have removed the billfold. More fundamentally, there was no proof that defendant even had a billfold in his possession at any time on that day. Additionally, the court voting for the result reached in this case does not consider the fact that when the wallet was returned to the widow by the police, identification papers and currency were still inside. This is an additional factor negativing the possibility of a robbery, for if the defendant did commit the robbery and take the wallet he would scarcely have neglected to take the money. Indeed, in his confession, he never stated that he took the wallet, claiming that the deceased resisted his attempt, that he panicked when he knifed the deceased, and immediately fled the scene. The fact that the police later returned the wallet to the widow adds nothing because they never explained how the wallet came into their possession. Certainly it is possible that the wallet was discovered on a subsequent inventory of the deceased’s personal effects and turned over to the police by the widow herself for purposes of assisting the investigation. Even though the confession corroboration requirement is one of the weakest in our law, corroboration by evidence, and not by speculation, is required to satisfy the statute. The arguments put forth by these members of the court, and relied upon by Judge Wachtler, are based upon unsubstantiated hypotheses and not upon acceptable proof. Appellate court speculation is not and, hopefully, will never be, a substitute for evidence and, particularly, where such "evidence” commits a man to prison for murder.
Whether the evidence that was submitted to the jury, i.e., defendant’s admission coupled with the finding of the body, suffices to support the felony murder conviction, though the predicate felony could not be proved, hinges on the interplay of two separate legal doctrines: the concept of felony murder and the requirement that admissions be corroborated. A person is guilty of murder in the second degree[1] when he commits or attempts to commit one of nine predicate felonies and in *340 the course of or in furtherance of or in flight therefrom, he or another participant in the felony causes the death of a nonparticipant. (Penal Law, § 125.25, subd 3.) Under modern statute, as well as at common law, the fact that a homicide was committed in the course of a felony itself supplied proof that the homicide was committed with the malice and felonious intent necessary to sustain a murder conviction. Even where it was evident that the defendant did not and could not have intended to kill, "the malicious and premeditated intent to perpetrate one kind of felony, was, by implication of law, transferred from such offense to the homicide which was actually committed, so as to make the latter offense a killing with malice aforethought, contrary to the real fact of the case as it appeared in evidence.” (People v Enoch, 13 Wend 159, 174, 175; People v Hüter, 184 NY 237, 243; People v Nichols, 230 NY 221, 226-227; People v Luscomb, 292 NY 390, 395.) "It is the malice of the underlying felony that is attributed to the felon”. (People v Wood, 8 NY2d 48, 51; see, also, People v Bornholdt, 33 NY2d 75, 85, cert den sub nom. Victory v New York, 416 US 905.) The felony murder doctrine infers from the intent to commit one of nine serious felonies the intent to commit, if necessary, a murder in order to achieve the criminal purpose. (See Gegan, Criminal Homicide in the Revised New York Penal Law, 12 NY Law Forum 565, 586.) By benefit of statute, therefore, it is possible to obtain a felony murder conviction where the defendant could not be convicted of common-law murder since he did not act with specific homicidal intent. The vital item then in felony murder is the predicate felony, for without it the delicate legal fiction has no play.
At the same time, the law continues to provide that no person may be convicted by his own statement alone. Before a conviction may be had, a confession or admission must be corroborated by "additional proof that the offense charged has been committed.” (GPL 60.50.) This requirement, the weakest of all corroboration requirements, is designed to guard against the possibility that a defendant might be convicted and jailed for a crime that never occurred. Thus, the prosecution must adduce some proof, of whatever weight, that a crime was committed by someone. (See, e.g., People v Daniels, 37 NY2d 624, 629; People v Reade, 13 NY2d 42, 45; People v Cuozzo, 292 NY 85, 92.)
In People v Lytton (257 NY 310), this court first directly *341 considered the extent to which a confession had to be corroborated to prove a felony murder. In Lytton, the defendant admitted firing the fatal shots while engaged in the commission of a robbery. Disinterested witnesses identified the defendant as the assailant. Thus, the confession was not the sole basis for finding that the murder was perpetrated in the course of the felony. (257 NY, at p 312.) Chief Judge Cardozo, speaking for the court, ruled that the "crime charged against this defendant is homicide, and the fact that a homicide has been committed is proved, without reference to a confession, by the testimony of eye-witnesses as well as by the discovery of the body, bearing tokens of a fatal wound.” (257 NY, at pp 313-314.) Since at that time an indictment did not even have to allege the homicide was committed in the course of another felony, the court indicated that there was no need for independent corroboration of the underlying felony. (257 NY, at p 315.)[2] Of course, such a statement was unnecessary for the decision since there were two witnesses who testified to the facts of the robbery. (257 NY, at p 316.) In People v Louis (1 NY2d 137, 140-141), the court directly held that since the charge was "murder, not robbery”, "there was no need for evidence, separate and apart' from the statements [of the defendants], of the underlying felony.” However, none of the four cases cited for that proposition squarely support the view expressed. In three of them, only one of which involved a felony murder, there was other evidence aside from the confession of the defendants. (People v Gold, 295 NY 772; People v Lytton, supra; People v Roach, 215 NY 592, 596.) In the fourth case, inconsistencies in the confessions led to reversal of the judgment of conviction. (People v Cuozzo, 292 NY 85, supra.)
In any event, the CPL, effective September 1, 1971, did away with the old common-law form of murder indictment (see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL art 200, p 195) and, thus, removed the underpinnings of the Lytton "rule”. In Lytton, the court relied *342 upon the fact that it was not necessary to allege that a murder was committed in the course of another felony. However, since 1971, it has been necessary for the prosecution to allege the commission of a "designated offense” and each offense charged must be alleged in a separate count. (CPL 200.50, subds 3, 4.) Moreover, each count must contain a "plain and concise” statement asserting facts which support every element of the offense charged. (CPL 200.50, subd 7.) Thus, it is now necessary, as was done in this case, to allege murder and felony murder in separate counts, with the felony murder count setting forth the commission of a specific underlying predicate felony.
It is right that the prosecution be required to allege, in the felony murder count, the commission of a predicate felony. As previously noted, it is the felony that lends the basis for the felony murder conviction. Without the felony, the prosecution must prove, beyond a reasonable doubt, that the defendant possessed the requisite homicidal intent. In this case, there was absolutely no corroborating proof of the confessed attempted robbery. Yet the attempted robbery is relied upon to make this killing punishable as murder. It is of special significance that the jury, under another count of the indictment, refused to find the defendant guilty of common-law murder, finding, instead, that the defendant was guilty of manslaughter in the first degree. In other words, the jury found that although the defendant may have intended to commit serious physical injury to the deceased (Penal Law, § 125.20, subd l),[3] he did not intend to kill the deceased. It is the operation of the felony murder doctrine that turns this "manslaughter” to "murder”. In our view, the fact that there is no corroborating proof of the underlying felony, the critical element in felony murder, is fatal to the conviction. As we have said, the sole evidence of the robbery is that which came from the defendant’s own admissions. The policy of this State is that no person can be convicted solely upon his own admission. Given this policy, it is, as a matter of logic, impossible to conclude that a felony of which there is legally insufficient proof may yet form the basis of a felony murder conviction. Our conclusion is basic: without sufficient proof of the felony, there cannot be sufficient proof of a felony murder. Our view is buttressed by the fact that in this case, the underlying felony *343 was charged and the charge was, as it should have been, dismissed. If it is difficult to contend that a felony murder be found where the proof of the felony is insufficient, it is doubly difficult to argue that the felony murder conviction may stand though the underlying felony originally charged was dismissed.
We recognize the well-established rule that a confession of homicide is amply corroborated by the finding of a body bearing the indicia of a criminal assault. At the same time, there is the more fundamental rule that each element of the crime must be established by proof beyond a reasonable doubt. (CPL 70.20.) Thus, the confession in these cases must supply both the intent and the act. If the defendant admits an intentional killing, the finding of the corpus delicti amply verifies that admission. On the other hand, if the defendant informs the police of a justifiable homicide, then the requisite intent must come from outside the confession. Similarly, in felony murder, where the intent flows from the underlying felony, there must be corroborating evidence of the felony. To state that the finding of the body corroborates the fact of a death in the course of a felony is to pile an inference on top of an inference. Although the People may have proved, with the aid of the confession, a homicide, they have not proved a felony murder. Since 1971, proof of a generic homicide has been insufficient. To obtain a murder conviction based on an admission, the admission must supply all the elements of the crime of murder, including intent, and the People must produce corroborating evidence. But here, they did not corroborate a felony murder and, according to the jury, did not prove an intentional killing.
We do not hold that in each case of felony murder the prosecution must charge and convict for the underlying felony. Rather, we hold simply that there must be, in the record, legally sufficient evidence to corroborate defendant’s admission that he participated in a felony during the course of which a death ensued. In this case, there is no corroboration and the conviction is not supported by legally sufficient evidence.
Three of our colleagues, with all due respect, miss the point. Although there may have been corroborating evidence of homicide, there has been no corroborating evidence of the felony underlying this felony murder conviction. There is no crime of homicide; there is the general category of homicide, with crimes defined in accordance with the intent of the *344 perpetrator. Here, the defendant did not confess to intentionally killing his victim. Indeed, the jury found, on the count of common-law murder, that there was no intentional killing.
Although corroboration need not extend to every element of the crime, each element must be proved beyond a reasonable doubt. Where there is no proof of an intent to kill and no corroboration or an admission that a predicate felony occurred, the element of mens rea has not been established to the extent required by law. Here, there has been no proof of intent and, likewise, no legally sufficient proof of the predicate felony of attempted robbery. Hence, there has been no sufficient proof of defendant’s guilt of intentional murder, or of felony murder. It is fundamentally unfair, if not shocking to a concerned conscience, that, as our three colleagues maintain, an unproved felony may be employed to artifically raise the defendant’s culpable mental state. Surely, it is wrong to read the felony out of felony murder. We would free the defendant of the charge of felony murder because there has been insufficient proof, as a matter of law, of that crime. It is too late in the day to argue that a confession by itself is sufficient proof of guilt. It is even more obvious that a man should not be held for a crime for which his guilt has not been established in a court of law. We would hold that a man-slaughterer cannot be punished as a murderer because of the unsupported use of a legal fiction.
Had there been no error in the court’s charge with respect to manslaughter, second degree, we would have no difficulty in modifying the Appellate Division order appropriately. However, all the members of the court agree that the trial court erred in refusing to charge manslaughter in the second degree as a lesser-included offense. A defendant is entitled to a charge down to a lesser-included offense if, upon any view of the facts, a jury might properly find that the defendant committed the lesser crime and not the greater. (CPL 300.50; People v Asan, 22 NY2d 526.) "Under the circumstances of this case, the jury could reasonably have believed defendant’s claim that he was not the initial aggressor but only attempted to repel the victim’s attack upon him, and at the same time accept the evidence that defendant, at some point during the the struggle with the victim, inflicted fatal wounds on [him]. Thus, the jury might have found that defendant acted recklessly and therefore committed acts constituting manslaughter in the second degree (Penal Law, 125.15)”. (People v Tai, 39 *345 NY2d 894.) The refusal to charge manslaughter in the second degree was error requiring a new trial.
We conclude, therefore, that the order of the Appellate Division should be reversed; the felony murder count in the indictment should be dismissed (CPL 470.40, subd 1; 470.20, subd 2); and a new trial should be ordered on the remaining counts of the indictment.
Judges Jones and Cooke concur with Judge Gabrielli; Judge Wachtler concurs in a separate opinion; Judge Jasen dissents and votes to reverse in another separate opinion in which Chief Judge Breitel and Judge Fuchsberg concur.
Order modified and case remitted to Westchester County Court for a new trial in accordance with the opinion herein and, as so modified, affirmed.

. At the time of this occurrence, the Penal Law contained the single degreeless crime of murder. When the Penal Law was revised in 1974 to include the capital offense of murdering a police officer (see Penal Law, § 125.27), the former murder statute was retitled, without a change in substance, murder in the second degree. (L 1974, ch 367, § 4.)

. Judge Crane took the view that the "form of the indictment cannot obscure the reality.” He noted that the "important proof in a felony murder is the felony, because this makes the act of killing murder * * * even though the defendant did not intend to kill.” In his opinion, he recognized that, in felony murder, there can be no conviction for a lesser-included offense since there is no possible shading of felonious intent as there is with respect to homicidal intent. (People v Lytton, 257 NY 310, 317 [Crane, J., concurring]; see, also, People v Joyce, 233 NY 61, 73-75 [Crane, J., concurring].)

. This finding is, by itself, suspect because of the refusal of the court to charge down to manslaughter in the second degree, an issue discussed more fully infra.