Jasen, J.
On this appeal, defendant argues that his shooting of a police officer did not occur, as a matter of law, in immediate flight from a robbery and that, therefore, his conviction for felony murder should be set aside. We hold that, under the circumstances presented, the issue of whether the homicide was committed in immediate flight from the robbery was properly presented to the jury as a question of fact. The order of the Appellate Division, therefore, should be affirmed.
At trial, the People submitted overwhelming evidence, largely the confession of the defendant and the testimony of several eyewitnesses, that on the night of December 29, 1971, the defendant shot and killed Nassau County Police Officer Richard Rose in a bowling alley parking lot. The events of that evening can be briefly recited. At approximately 8:00 p.m., defendant obtained a ride to the County Line Shopping Center in Amityville, New York. Ten minutes later, he entered a delicatessen, produced a gun, and demanded money from the clerk. The clerk turned over about $145 in cash and checks. After the robbery, Gladman left the shopping center and walked through the surrounding neighborhood, eventually arriving at the County Line Bowling Alley. In the meantime, the robbery had been reported to the Nassau County Police Department and an alert was transmitted over the police radio. Two officers arrived at the delicatessen at 8:16 p.m., just minutes after the defendant had left. A description of the robber was obtained and broadcast over the police radio. Normal police procedure required that unassigned patrol cars proceed to the vicinity of the crime area and any nearby major intersections in an effort to seal off potential avenues of escape. As Gladman walked onto the parking lot of the bowling alley, he saw a police car turn and enter the lot. He hid under a parked car. Patrolman Rose, the lone officer in *125 the car, emerged from his vehicle and walked over to defendant’s hiding place. The defendant got up from underneath the car with his gun concealed between his legs. The officer ordered the defendant to put his weapon on the car hood; instead, the defendant turned and fired. Patrolman Rose, mortally wounded, struggled to his police car and attempted to use the radio to summon the assistance of brother officers. He collapsed on the seat. The defendant commandeered the automobile of a bowling alley patron and made good his escape. An off-duty New York City police officer used Rose’s radio to broadcast a signal for help. The report of the shooting went over the police radio at 8:24 p.m. Eyewitnesses fixed the time of the altercation at approximately 8:25 p.m. The bowling alley was located less than one-half mile from the robbed delicatessen.
Defendant was subsequently captured, identified by eyewitnesses and indicted. A motion to suppress his confession was denied, as was a motion to suppress evidence of a pretrial, police station lineup.
After a jury trial, the defendant was convicted of manslaughter in the first degree, felony murder, robbery in the first degree and grand larceny in the third degree. The Appellate Division unanimously affirmed the judgment of conviction, without opinion. The principal issue on this appeal is whether the jury was properly permitted to conclude that the shooting of Officer Rose occurred in the immediate flight from the delicatessen robbery.
A felony murder is committed when a person, acting alone or in concert with others, commits or attempts to commit one of nine predicate felonies, of which robbery is one, and "in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants”. (Penal Law, § 125.25, subd 3.) By operation of law, the intent necessary to sustain a murder conviction is inferred from the intent to commit a specific, serious, felonious act, even though the defendant, in truth, may not have intended to kill. Here, the jury, by its verdict, found that the defendant did not possess a murderous intent. The question is whether the jury could properly find that the killing of Officer Rose was in the immediate area from the robbery, thus triggering the application of the felony murder doctrine. To resolve the issue, it is first necessary to refer to the checkered case law in *126 this State, applying the felony murder concepts to cases, such as this one, where the fatal wounds were inflicted in the course of escape.
Under older statutes which did not specifically address the issue,* it was early held that a killing committed during an escape could, under some circumstances, constitute a felony murder. In People v Giro (197 NY 152), burglars aroused a slumbering family, the son struggled with one intruder and when the mother went to the aid of her child, she was shot dead. In affirming subsequent convictions, the court stated that the defendants committed actions in furtherance of their design to rob the house and "escape was as much a part thereof as breaking in with the jimmy or stealing the pocketbook. When they armed themselves to enter upon a felonious undertaking, shooting was the natural and probable result in order to get away if discovered, and if either fired the fatal shot both are responsible.” (197 NY, at pp 157-158.) Giro, however, was a case where the defendants got away with some loot. A different result was reached in People v Hüter (184 NY 237), where the defendant broke into a bake shop and, when discovered, was in the act of removing egg crates from the store and placing them in his wagon. On discovery, defendant and his companion abandoned the wagon and fled on foot. A watchman summoned a police officer, the officer chased the defendant, and was fatally shot. The court held that a felony murder conviction could not be sustained. The hot pursuit of the watchman and the police officer "did not operate to continue the burglary after the defendant had abandoned the property that he undertook to carry away and had escaped from the premises burglarized. In all of the cases to which our attention has been called, in which persons have been convicted of murder in the first degree by reason of the killing of a person while the accused was engaged in the commission of a burglary, the killing took place upon the premises.” (184 NY, at p 241.) Although the defendant had armed himself in preparation of a possible escape, this did not serve to continue an "abandoned” crime. Rather, this was a factor that the jury could consider in finding that the defendant had intended to *127 kill anyone who crossed his criminal path, thereby justifying conviction for an intentional killing. (184 NY, at p 240.) (See, also, People v Marendi, 213 NY 600, 607.) These kinds of analyses soon led to the development of some rather arbitrary rules. (See Corcoran, Felony Murder in New York, 6 Fordham L Rev 43, 60-65.) If the defendant left the premises without the loot, the criminal action was deemed either terminated or abandoned and a subsequent homicide would not be a felony murder. (People v Marwig, 227 NY 382; People v Collins, 234 NY 355.) "The very meaning of flight is desistance or abandonment, unless, indeed, in special circumstances as in cases where a thief is fleeing with his loot.” (People v Moran, 246 NY 100, 103 [Cardozo, Ch. J.].) On the other hand, both presence on the premises and retention of loot were not regarded as conclusive proof of felony continuation, but were merely evidence that the felony was continuing. (People v Lunse, 278 NY 303, 312; People v Walsh, 262 NY 140, 148; People v Smith, 232 NY 239, 242.) The term premises was rather strictly confined to "within the four walls of the building” (People v Walsh, supra, at p 148) and a killing on an immediately adjoining public street would not be a killing on the "premises”. (People v Collins, 234 NY 355, 363 [warehouse burglar was discovered and hid under railway car; when the watchman flushed him out, the watchman was killed by burglar’s accomplices].)
The later New York cases indicate some dissatisfaction with the strict legal rules that had developed and tended to leave the question of escape killings to the jury as a question of fact, under appropriate instructions. The change was to point out "generally that the killing to be felony murder must occur while the actor or one or more of his confederates is engaged in securing the plunder or in doing something immediately connected with the underlying crime (Dolan v. People, 64 N. Y. 485); that escape may, under certain unities of time, manner and place, be a matter so immediately connected with the crime as to be part of its commission (People v. Giro, 197 N Y. 152); but that where there is no reasonable doubt of a complete intervening desistance from the crime, as by the abandonment of the loot and running away, the subsequent homicide is not murder in the first degree without proof of deliberation and intent. (People v. Marwig, 227 N. Y. 382).” (People v Walsh, 262 NY 140, 148, supra; People v Jackson, 20 NY2d 440, 454, cert den 391 US 928.) The question of termina *128 tion of the underlying felony was then left to the jury as a fact question. (People v Jackson, supra.)
The New York approach was more rigid than that developed in other jurisdictions. The majority of the States tended to follow the "res gestae”theory—i.e., whether the killing was committed in, about and as a part of the underlying transaction. (See Ann., 58 ALR3d 851.) California had adopted the res gestae theory, at least insofar as robbery is concerned, holding that a robbery is not complete if the "conspirators have not won their way even momentarily to a place of temporary safety and the possession of the plunder is nothing more than a scrambling possession. In such a case the continuation of the use of arms which was necessary to aid the felon in reducing the property to possession is necessary to protect him in its possession and in making good his escape * * * The escape of the robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property. Without revolvers to terrify, or, if occasion requires, to kill any person who attempts to apprehend them at the time of or immediately upon gaining possession of said property, their plan would be childlike.” (People v Boss, 210 Cal 245, 250-251 [1930].) Subsequent case law indicates that, in California, the robbery is ongoing simply if the culprit had failed to reach a place of temporary safety. (People v Salas, 7 Cal 3d 812.) The comparative rigidity of the New York approach has been explained as stemming from the fact that, at the time, New York, with a minority of other States, provided that all felonies would support a conviction for felony murder. (See Byrn, Homicide under the Proposed New York Penal Law, 33 Fordham L Rev 173, 193-195.) Of course, felony murder was also a capital offense and the cases attempted to narrow the scope of liability (cf. People v Wood, 8 NY2d 48, 51), particularly where it was an accomplice that did the actual killing (cf. People v Marwig, 227 NY 382, supra).
The 1967 Penal Law limited the application of the felony murder concept to nine serious and violent predicate felonies. At the same time, it was provided that the doctrine would apply to a killing committed in "immediate flight”. This change was intended to do away with many of the old technical distinctions relating to "abandonment” or "completion”. (See Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 125.25, p 400; Gegan, *129 Criminal Homicide in the Revised New York Penal Law, 12 NYLF 565, 589.)
Under the new formulation, the issue of whether the homicide occurred in "immediate flight” from a felony is only rarely to be considered as a question of law for resolution by the court. (People v Carter, 50 AD2d 174, 176.) Only where the record compels the inference that the actor was not in "immediate flight” may a felony murder conviction be set aside on the law. Rather, the question is to be submitted to the jury, under an appropriate charge. The jury should be instructed to give consideration to whether the homicide and the felony occurred at the same location or, if not, to the distance separating the two locations. Weight may also be placed on whether there is an interval of time between the commission of the felony and the commission of the homicide. The jury may properly consider such additional factors as whether the culprits had possession of the fruits of criminal activity, whether the police, watchmen or concerned citizens were in close pursuit, and whether the criminals had reached a place of temporary safety. These factors are not exclusive; others may be appropriate in differing factual settings. If anything, past history demonstrates the fruitlessness of attempting to apply rigid rules to virtually limitless factual variations. No single factor is necessarily controlling; it is the combination of several factors that leads to a justifiable inference.
In this case, the jury could properly find, as a question of fact, that the killing of Officer Rose occurred in immediate flight from the delicatessen robbery. The shooting occurred less than 15 minutes after the robbery and less than a half mile away. The defendant had made off with cash proceeds and was attempting to secure his possession of the loot. The police had reason to believe that the robber was still in the immediate vicinity and had taken steps to seal off avenues of escape. In this regard, the absence of proof as to why Officer Rose turned into the bowling alley parking lot is no deficiency. The standard is not whether the police officer subjectively believed that the defendant was the robber. Indeed, the defendant’s own apprehension may be more valuable. The defendant’s response to the observation of the police car was to seek an immediate hiding place. This indicates that the defendant perceived that the police were on his trail. The record does not indicate that the officer knew or supposed, that defendant committed a crime; it does indicate that the defend *130 ant feared that the officer possessed such knowledge. Additionally, the defendant had not reached any place of temporary safety. In short, there is evidence from which the jury could conclude, as it did, that the defendant was in immediate flight from the robbery and that he shot the officer in order to make good his escape with the loot. The jury was properly charged as to the relevant considerations and we see no basis for disturbing its findings.
As to defendant’s contention that he was deprived of a right to counsel at the lineup, People v Blake (35 NY2d 331) establishes that there is no absolute right to counsel at a prearraignment lineup. The other claims, that the lineup was suggestive and that physical evidence was improperly received at the trial, are without merit.
The order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

 The Penal Code defined felony murder as a killing "[wjithout a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise”. (Penal Code, § 183.) The Penal Law of 1909 carried forward this definition in identical language. (Penal Law [1909], § 1044, subd 2.)