Elbert BLANGO, Appellant,

v.

UNITED STATES, Appellee.

Wilbur L. STATON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 9385, 9503.

District of Columbia Court of Appeals.

Argued Aug. 19, 1976.

Decided May 10, 1977.

Rehearing and Rehearing en Banc Denied June 30, 1977 in No. 9385.

Rehearing Denied July 1, 1977 in No. 9503.

Robert H. Haas, Baltimore, Md., appointed by this court, for appellant Blango. Frederick J. Sullivan, Hyattsville, Md., also appointed by this court, was on the brief for appellant Blango.

James A. Caulfield, Washington, D. C., for appellant Staton.

Richard A. Graham, Assistant U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Albert H. Turkus, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

Elbert Blango and Wilbur Staton appeal from convictions of first-degree premeditated murder (D.C.Code 1973, § 22–2401), felony murder (D.C.Code 1973, § 22–2401), and first-degree burglary (D.C.Code 1973, § 22–1801(a)). They both contend that the evidence was insufficient to sustain their convictions. In addition, appellant Blango argues that he cannot properly be convicted of both first-degree burglary and felony murder because "[t]he fact of the shooting supplies the intent element in the burglary, and the presence of the burglary is a prerequisite to the existence of the elements of felony murder." Appellant Staton argues that the trial court improperly limited his cross-examination of a witness and that the trial court erred in giving a deadlock-dissolving charge to the jury. We find the convictions of appellants to be amply supported by the evidence and the actions of the trial court to be free from error. Accordingly, we affirm the convictions.

On September 21, 1973, Blango, his brother Dago, Staton's brother, and the victim in this case, Sam Driver, were in the Harvard Grille. Driver argued and fought with Dago and also pistol-whipped Staton's brother to the extent that the latter required hospitalization. The argument was over a shotgun belonging to Dago. The following evening Driver was at home in an upstairs room with several acquaintances, including Charles Cook, Jerome Kirkwood, James Jones, and Brenda Wall. Cook went downstairs for some air. While he was standing outside, three men approached him and asked for Driver. Cook said that he would get Driver and went upstairs, closing the front door as he went; however, the three men entered the house and followed him upstairs. Driver, joined by Cook, Kirkwood, Jones and, later, Wall, came out of the upstairs room and intercepted the men on the upstairs landing.

Appellant Blango, one of the three intruders, began speaking to Driver about the shotgun then supposedly in Driver's possession. Staton, another of the three men then stepped forward, said, "let's get it over with," and shot Driver with a .45 caliber gun. The various witnesses ran for cover at that point, although Brenda Wall stayed

long enough to see appellant Blango move his hand toward the area of his belt. Another witness, James Jones, who had seen Blango in possession of a .25 caliber pistol two or three weeks earlier, also saw Blango reach to the belt area and, in addition, saw the outline of a gun there. At this point, two more shots were fired at Driver and were by inference attributed to appellant Blango although no one actually saw him fire a gun. Driver was shot with both a .45 and a .25 caliber bullet.

■ Appellant Blango's specific argument on sufficiency of the evidence is two fold: (1) the trial testimony failed to establish that he possessed the requisite intent to commit a crime at the time he entered the premises where the killing occurred; and (2) the government's evidence failed to establish that his conduct was the result of premeditation and deliberation, nor did it show that he associated himself with the conduct of others in a way which would make him accountable as a principal under an aiding and abetting theory. We conclude that the points are not well taken.

The evidence, viewed in the light most favorable to the government, along with the permissible inferences drawn therefrom, showed that (1) Blango had an interest in the previous event in the Harvard Grille because the victim had fought with Blango's brother; (2) the fight in the Grille concerned a shotgun which was also the center of the dispute between Blango and the victim immediately before the shooting; (3) Blango entered the victim's home without the victim's consent and, once inside, led his companions up the stairs; (4) Blango was observed reaching toward the area of his belt where the outline of a gun was seen; and (5) the victim suffered wounds from a .25 caliber gun as well as from a .45 caliber weapon and Blango previously was shown to have possessed such a weapon.

We hold that such evidence adequately supports a finding that Blango possessed the requisite intent to assault the victim at the time he entered the premises. Moreover, the jury could also conclude beyond a reasonable doubt that Blango had associat-

ed himself with the premeditated and deliberate conduct of Staton so as to be accountable under an aiding and abetting theory. Moreover, there was also ample evidence to support a finding beyond a reasonable doubt of premeditation and deliberation.

■ Appellant Staton, on the other hand, attacks the sufficiency of the identification testimony used against him. It seems uncontested that the appropriate standard for reviewing on appeal the sufficiency of identification evidence is the same as the standard applicable to other types of evidence, e. g., Crawley v. United States, D.C.App., 325 A.2d 608, 608–09 (1974) (Nebeker, J., separate statement as to why he voted to deny rehearing en banc in Crawley v. United States, D.C.App., 320 A.2d 309 (1974)).

■ We note that at trial Staton was identified as one of the perpetrators by two witnesses, both of whom had known Staton prior to the shooting. Both witnesses also had had an opportunity to observe him at the scene. Cook had confronted Staton in front of the victim's house and Kirkwood had joined the victim at the top of the stairs and had observed the three intruders at that point. Appellant Staton was identified by his clothing as well as by his facial characteristics. The limited amount of confusion and the discrepancy concerning Staton's nickname, physical attributes, and role in the incident were all apparent to the jury and could be weighed by it. Some degree of misapprehension is tolerably inherent in any crime encounter description. See Brown v. United States, 125 U.S.App.D.C. 43, 46, 365 F.2d 976, 979 (1966). Accordingly we hold there was sufficient evidence of identity from which the jury could conclude beyond a reasonable doubt that Staton was one of the perpetrators.

Appellant Blango also argues that a burglary based upon an assault cannot properly serve as the predicate for a felony-murder conviction. He would merge a burglary based upon an assault with the subsequent homicide and then conclude that there is no independent underlying felony—a necessity

for felony murder. We hold that the application of the merger doctrine is not warranted in this case both because of the language of the felony-murder statute and the significantly different societal interests served by the felony-murder and burglary statutes.

D.C.Code 1973, § 22–2401 enumerates several predicate felonies in the perpetration of which a *nonpurposeful* killing is deemed to be first-degree murder. "*[A]ny* housebreaking while armed with or using a dangerous weapon" is one of these predicate felonies. (*Id.*; emphasis supplied.) The wording of the statute is all-inclusive as to burglaries and does not exclude a burglary based upon the intent to assault. The issue of whether an assault by itself would serve as a predicate to felony murder comes under a part of the felony-murder statute—not relevant here—involving purposeful killings while committing any offense punishable by imprisonment in a penitentiary.

More importantly, the societal interests served by each statute are separate and distinct. D.C.Code 1973, § 22–1801 proscribes the unlawful *entry* of certain enumerated premises when that entry is made with the specific intent to commit any illegal act therein. Section 22–1801(a) focuses on occupied dwellings and increases the punishment for the burglary of such premises. Section 22–1801(a) reflects the greater societal interest in protecting occupied dwellings due not only to the inherent danger to occupants during the commission of such an offense, but also to the value society places on the home. For purposes of § 22–1801, the crime is complete upon entry.

■ A killing subsequent to a burglary does not negate the fact of the burglary or invasion of the societal interests. The burglary is a separate and distinct act from the succeeding killing, yet may be deemed to be a continuing offense for purposes of the felony-murder statute. *See People v. Mason*, 54 Cal.2d 164, 4 Cal.Rptr. 841, 351 P.2d 1025, 1027–28 (1960); *People v. Huther*, 184 N.Y. 237, 77 N.E. 6, 8 (1906). The thrust of that part of the felony-murder statute which relates to nonpurposeful killings is to increase the penalty for such killings during the commission of certain enumerated felonies by implying from the commission of such felonies premeditation and deliberation. *Shanahan v. United States*, D.C.App., 354 A.2d 524, 526 (1976). The societal interest protected is security of the person and the value of human life, not the security of premises protected by the burglary statute.

■ The criminal plan carried out by Blango thus involved separate acts directed against two separate societal interests protected by these statutes. As in *Irby v. United States*, 129 U.S.App.D.C. 17, 20, 390 F.2d 432, 435 (1967), Blango's "course of conduct admitted of interruption and alteration in response to the deterrent influence of additional punishment." Blango committed burglary by knowingly entering Driver's home with the intent to assault him. Having committed the burglary and violated the appurtenant societal interests, it was still possible for Blango and his companions to withdraw from the premises without attacking Driver. But continuation of their criminal conduct resulted in the death of Driver and their commission of a second, distinct crime. Since Blango killed Driver on the premises in the course of the burglary, the requirements of the felony-murder statute were satisfied and the fact of the killing did not negate the fact of the burglary.

The rationale for this conclusion was best stated in *People v. Miller*, 32 N.Y.2d 157, 344 N.Y.S.2d 342, 297 N.E.2d 85 (1973), where the defendant committed burglary and satisfied the requirements of the felony-murder statute, despite the claim of the defendant that assault was the underlying felony.

It should be apparent that the Legislature, in including burglary as one of the enumerated felonies as a basis for felony murder, recognized that persons within domiciles are in greater peril from those entering the domicile with criminal intent, than persons on the street who are being subjected to the same criminal in-

tent. Thus, the burglary statutes prescribe greater punishment for a criminal act committed within the domicile than for the same act committed on the street. Where, as here, the criminal act underlying the burglary is an assault with a dangerous weapon, the likelihood that the assault will culminate in a homicide is significantly increased by the situs of the assault. . . . [344 N.Y.S.2d at 345, 297 N.E.2d at 87.]

We agree with this reasoning and, accordingly, reject the holding of *People v. Wilson*, 1 Cal.3d 431, 82 Cal.Rptr. 494, 462 P.2d 22 (1969), which was based on the opposite conclusion that "the likelihood of homicide from the lethal weapon is not significantly increased by the site of the assault." 82 Cal.Rptr. at 500, 462 P.2d at 28. We find the reasoning of the California court to be faulty in overlooking the fact that a homicide committed in seclusion is less likely to be observed or immediately discovered than one committed in a public place.

Appellant Blango's focus on the assault underlying the burglary conviction is misplaced and is addressed to that part of the felony-murder statute which involves purposeful killings. The cases he cites in support of his analysis mostly concern the proposition that felony murder cannot be charged where the only other crime charged is assault. *State v. Essman*, 98 Ariz. 228, 403 P.2d 540 (1965); *People v. Ireland*, 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580 (1969); *State v. Clark*, 204 Kan. 38, 460 P.2d 586 (1969); *State v. Fisher*, 120 Kan. 226, 243 P. 291 (1926); *People v. Huther*, 184 N.Y. 237, 77 N.E. 6 (1906); *State v. Branch*, 244 Or. 97, 415 P.2d 766 (1966). In the instant case, however, Blango was charged with burglary, not assault, as the predicate felony. These same cases further emphasize that where the killing is committed in the perpetration of a distinct offense, where the other elements constituting the felony are so distinct from that of the homicide as not to be an ingredient of the homicide, felony murder is properly charged. As noted above, burglary is such a distinct offense and thus an appropriate predicate felony.

Accordingly, the doctrine of merger is inapplicable in this case, because the Congress has decided that a series of acts within the same or continuous transaction offend multiple societal interests and constitute separate offenses. *See Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). We hold that the felony of first-degree burglary while armed and the murder of Driver were separately identifiable crimes, for which Congress has prescribed a separate and distinct punishment in relationship with the societal interest involved. *See Irby v. United States, supra.*

■ Appellant Staton contends that he was improperly limited in putting his theory of defense before the jury during his cross-examination of Detective Hayes. This theory of defense involved the fact that the police did not know the identity of the smaller man with appellant Blango on the night of the shooting. Subsequent to the crime, Dago told Detective Hayes that Staton had confessed to him. Because of this statement by Dago, the detective went to Cook, told him what had transpired with Dago, and showed Cook a picture of Staton. It was allegedly this influence on Cook which propelled Staton into the case. Accordingly, the trial court's failure to permit examination of the circumstances amounted to a denial of a fair trial. The government was able to get before the jury the identification of Staton's photo by Cook and Kirkwood, but Staton was unable to get before the jury his theory of why they identified him. Staton was unable to approach these circumstances through Dago because, during his direct examination, Dago denied having made the statement that Staton had confessed to him. Therefore, the prosecutor declared surprise and had to examine Dago as a hostile witness.

We conclude that appellant Staton was not cut off from an entire line of inquiry, but rather was prevented from pursuing one improper question.. The objected-to

question asked of Detective Hayes was as follows:

Q. You don't figure [Cook] is too bright, and you don't give much credence to his heights; how about his general description; didn't you partly on the statement of Mr. Cook arrest Mr. Staton? And isn't it correct that on the information you gained from the not too bright, blind in one eye, and not to be believed about heights; that you had this man locked up who is here today in trial?

The trial court sustained the objection to this question and noted that defense counsel was trying to leave the jury with the inference that Cook's testimony was the main reason for appellant Staton's arrest. Defense counsel did not pursue the matter, and asked no further questions of the witness.

Rather than being an inquiry into the underpinnings of the identifications made by Cook and Kirkwood, counsel's question was an attempt to call into question the reasons for Staton's arrest by the police, an issue irrelevant to the trial of the case. In addition, the question was an attempt to broach an area foreclosed by Dago's refusal to acknowledge the statement attributed to him. The cross-examination would have led directly to hearsay testimony concerning the statement which the declarant himself denied making. Counsel initially tried to achieve the same result during his cross-examination of Detective Drummond. He had asked Detective Drummond for the source of his information, other than any identifications made by Cook or Kirkwood, which implicated Staton. When Detective Drummond identified Dago as the source, counsel tried to pursue the substance of Dago's statement, but was cut off by objections and the trial court's ruling of irrelevancy and hearsay. Counsel for Staton again tried to pursue this line of questioning with Detective Hayes, having been unable to develop any hint of suggestivity through other witnesses. Thus, the question was not designed to inquire into suggestive police procedures, but rather was directed at Detective Hayes' motivations. It was not a cutoff of an entire line of inquiry, but rather an exclusion of one improper question. Accordingly, we find no error in the trial court's ruling.

■ Finally, appellant Staton argues that the trial court should have granted a mistrial one-half day after the jury returned its verdict against Blango, as opposed to giving the instruction set forth in *Winters v. United States*, D.C.App., 317 A.2d 530 (1974). He argues that, under the circumstances, the instruction was coercive. We disagree. The jury had indicated its indecisiveness only two times prior to receiving the *Winters* instruction: when it returned its verdict against appellant Blango, and at 1:45 p. m. the next day when the instruction was given. There were no subsequent notes. In view of the court's memorandum detailing the jury deliberation circumstances, it cannot be said that the trial court abused its discretion in giving the instruction. *See Thompson v. United States*, D.C.App., 354 A.2d 848 (1976).

Accordingly, the judgments of conviction are

*Affirmed.*