**William B. CRAWLEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7512.**

District of Columbia Court of Appeals.

Argued Jan. 31, 1974.

Decided June 4, 1974.

1. M.A.P. v. Ryan, D.C.App., 285 A.2d 310 (1971).

———◆———

Charles S. Rhyne, Washington, D. C., appointed by this court, for appellant.

E. Lawrence Barcella, Jr., Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, John A. Terry and John A. McCahill, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, GALLAGHER and PAIR, Associate Judges.

FICKLING, Associate Judge:

 This is an appeal from convictions in a jury trial of burglary in the first degree,[1] grand larceny,[2] and malicious destruction of property.[3] On appeal appellant contends that there was insufficient evidence to sustain these convictions.[4] We agree and reverse.[5]

In the early morning hours of November 7, 1972, the complainant, Howard T. Robinson, was watching television in his home. At approximately 1:45 a. m., he heard a disturbance in the front part of his house. While investigating this disturbance, he saw the back of a man who was absconding with his 18″ color television set[6] through a shattered sliding glass door which leads to the patio. In response he directed his wife to call the police. Immediately thereafter, he walked out onto the patio which overlooks a well-lit parking lot and saw, for a period of 60 to 90 seconds, two men running—while still carrying his

television set—across the parking lot to an apartment complex located at 1200 Delaware Avenue, S.W. During this time one of the burglars turned toward him and admonished him not to come any closer or try to follow. He complied.

A few minutes later the police arrived. The complainant furnished the responding police officer with the following description: two Negro males, *the first, 5′7″ tall, 17 years of age, weighing 135 pounds, with wine colored pants and a white shirt*; the second, 5′7″ tall, 17 years of age, weighing 150 pounds, wearing a blue jacket, a white shirt, and white pants. A lookout was immediately broadcast.

Approximately ten minutes after hearing this broadcast, Officer Jerome Thomas saw appellant walking down the street. Officer Thomas recognized that appellant did not fit the broadcast description in any respect except for the fact appellant was a black man and was wearing wine colored pants. *At the time, appellant stood 6′2″, weighed 170 pounds, and was 22 years old;* he was *wearing a black shirt, blue denim jacket, and wine colored pants.* Nevertheless, Officer Thomas stopped appellant because he was wearing wine colored pants. The officer asked appellant for his identification. Additionally, he told him that something had happened down the street; that he wanted to take him back to the scene; and that if he checked out, he would be released. Appellant agreed to go with the officer; he did not act suspiciously at any time during this encounter.

Appellant was then taken by Officer Thomas to the complainant's home. The complainant identified appellant as the person he had seen approximately fifteen mi-

---

1. D.C.Code 1973, § 22–1801.

2. D.C.Code 1973, § 22–2201.

3. D.C.Code 1973, § 22–403.

4. This contention was not set forth in the brief but was vigorously argued, without objection, at oral argument.

5. Appellant also contends that (1) he was arrested without probable cause and (2) the on-the-scene identification was violative of due process. However, since we reverse on the ground of insufficient evidence, we do not consider these contentions.

6. The value of the set was stipulated to be in excess of $100.

nutes before, carrying his television set and warning him to stay where he was.

Neither a lineup nor a photographic array was conducted after this on-the-scene identification. At trial six months later, the complainant was unable to make an in-court identification of appellant. Except for the on-the-scene identification, no other evidence connecting appellant to the crime was adduced. Although the complainant testified that the show-up identification was based upon his recognition of appellant's face, he was unable to remember any particular facial characteristics such as complexion, facial hair or scars, because he was very upset at the time of the incident. Indeed, he indicated that appellant had a common face, the type he sees every day. In response to the question, "So when the police came and asked you if you could give them a description of these two men, did you have any difficulty in giving any description" he answered, "No, I had none once they brought the suspect back."

Appellant presented an alibi defense. His testimony can be summarized as follows: On the evening in question, he and a friend took a bus to an apartment which is shared by Miss Gertrude Holt and Miss Perline Davis. The apartment is located at 1200 Delaware Avenue, S.W. They arrived at the apartment between 9 and 10 p. m.; while there, he played cards and listened to records with the people present. He left the apartment at approximately 2 a. m. and was on his way toward the bus stop when he was intercepted, 50 yards away from the apartment building, by Officer Thomas. Appellant's alibi was substantially corroborated by Miss Holt and Miss Davis.

At the close of all the evidence, counsel for appellant moved for judgment of acquittal; the motion was denied. After the jury rendered its verdict of guilty, appellant moved again for judgment of acquittal or, in the alternative, for a new trial. This motion was similarly denied. We hold that the trial court erred in denying these motions for judgment of acquittal.

■ A motion for judgment of acquittal is an important safeguard to the defendant. "It tests the sufficiency of the evidence against him, and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt." Wright, Federal Practice and Procedure: Criminal § 461 (1969).

■ The general test for directing a judgment of acquittal[7] must be applied in the special context where, as in this case, the finding of guilt rests solely upon the positive identification testimony of a single witness. United States v. Telfaire, 152 U. S.App.D.C. 146, 149 n. 5, 469 F.2d 552, 555 n. 5 (1972). Necessarily, the sole issue in this special context is whether the circumstances surrounding the identification could be found convincing beyond a reasonable doubt. Id. We concur with the court in Telfaire and think that the Fourth Circuit in United States v. Levi, 405 F.2d 380, 383 (1968), stated the proper approach:

> [A trial] judge has the power to refuse to permit a criminal case to go to the jury even though the single eye witness testifies in positive terms as to identity. . . . In deciding whether to permit a criminal case to go to the jury, where identification rests upon the testimony of one witness, the [trial] judge ought to consider with respect to identification testimony the lapse of time between the occurrence of the crime and the first confrontation, the opportunity during the crime to identify . . . the reasons, if any, for failure to conduct a line-up or use similar techniques short of line-

---

7. *See, e. g.*, Crawford v. United States, 126 U.S.App.D.C. 156, 375 F.2d 332 (1967); Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

up, and the [trial] judge's own appraisal of the capacity of the identifying witness to observe and remember facial and other features. In short, the [trial] judge should concern himself as to whether the totality of circumstances "give[s] rise to a very substantial likelihood of irreparable misidentification." [Footnote and citations omitted.]

■■ In applying the above approach, the trial court and this court must of course view the evidence in the light most favorable to the government. *See, e. g.,* Crawford v. United States, 126 U.S.App. D.C. 156, 375 F.2d 332 (1967). In addition, while we are mindful that the record on review is "cold," we think it proper—and indeed necessary—for us to draw upon our own experience, value judgments, and common sense in determining whether the verdict reached was in keeping with the facts. 8 Moore's Federal Practice § 29.06.

■ In the instant case the complainant testified that he was able to identify appellant at the show-up because the image of appellant's face was implanted on his mind. Although the complainant may have been a credible and convincing witness, it is well recognized that the most positive eyewitness is not necessarily the most reliable. *See* United States v. Johnson, 147 U.S. App.D.C. 31, 37, 452 F.2d 1363, 1369 (1971); Clemons v. United States, 133 U. S.App.D.C. 27, 39, 408 F.2d 1230, 1242 (1968). Thus, the complainant's emphatic statements about his ability to identify appellant are not controlling; rather, they are only one factor to consider in determining the reliability of the identification.

We turn, therefore, to the other relevant factors with respect to the identification testimony. The complainant was unable to identify appellant at trial. The only identification was at the show-up. The complainant's opportunity to observe the burglars was brief; he saw them under artificial light at night for 60 to 90 seconds. In addition to this brief observation period, his view of them was from an increasingly greater distance as the observation period was elapsing. When he first walked out on the patio, the burglars were running and 17 feet away; when they were out of the complainant's field of vision, they were approximately 150 feet away.

There was, moreover, a significant discrepancy—in almost all respects—between the description given by the complainant to the police and appellant's actual description. Appellant is 7″ taller, 35 pounds heavier, and 5 years older than the burglar who was described by the complainant. Also, he was wearing a *black shirt and blue denim jacket,* whereas the burglar wore a white shirt.

The complainant explained that the physical dimensions in his description of the burglars may have been inaccurate because he was looking down on them from a height of 8 feet. While it may be difficult to estimate physical dimensions from an elevated vantage point, we think a discrepancy as large as the one here indicates that the complainant did not have a clear image of the burglars. Furthermore, the complainant's rationale does not explain the discrepancy in the clothing description. An observation from an elevated vantage point should not affect one's ability to accurately observe clothing.

It may be that any one of the above factors, when viewed alone, is insufficient to compel the conclusion that there is a substantial likelihood of irreparable misidentification but in this case, when all factors are taken together, we hold there is a substantial likelihood of irreparable misidentification. Therefore, the motion for judgment of acquittal should have been granted.

Reversed with instructions.