**Leonard J. ANDERSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 8153.

District of Columbia Court of Appeals.

Argued Nov. 12, 1975.

Decided Sept. 24, 1976.

Mildred M. Matesich, Washington, D. C., appointed by this court, for appellant.

Roberta T. Eaton, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Sil-bert, U. S. Atty., John A. Terry, Stuart M. Gerson, John P. Hume and Joseph F. McSorley, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEBEKER, YEAGLEY and MACK, Associate Judges.

YEAGLEY, Associate Judge:

Appellant was convicted in a jury trial of two counts of armed robbery, violations of D.C.Code 1973, §§ 22–2901, –3302. This appeal followed. We affirm.

The facts show that on April 13, 1973, at about 10 p. m., two men, at least one of whom was armed, robbed the Miles Long Sandwich Shop in northeast Washington. An employee at the shop testified that she observed the two robbers enter, and while one took money from the cash register, the other herded the customers in the store to a corner so that they could not be seen from outside the window. At that time, according to her testimony, the lighting in the store was extremely bright and neither of the robbers wore any type of mask or facial covering. Therefore, she was able to closely observe the men, especially the man with the gun, later identified as appellant, and "would never forget his face."

About five minutes after the robbery, a number of police officers responded to the scene. One of the officers showed an array of "approximately forty-four" photographs to the employee of the shop. After looking at them, she identified appellant's picture without any hesitancy and stated that she was positive that he was the one who had the gun.

Another officer testified that he wrote down on a police department form the descriptions of the two robbers as given to him by the employee. That form as produced at trial said that the robber who held the gun was 5'7" tall and weighed 150 pounds. This description did not match that of appellant, who testified that he was at least 6'4" tall. The employee testified,

however, that she had never given the description of 5'7"—150 lbs., as written down by the officer, but had said "he was my height [5'9"] or more." Furthermore, at trial, the officer stated that it was quite possible he could have made a mistake in the descriptions because of the general confusion prevailing moments after the robbery and his desire to quickly get a radio run out on the suspects.

Two other witnesses (customers in the sandwich shop at the time) testified at trial but were unable to make an identification. Another employee of the shop said that at the time of the robbery she was on duty in the back and, upon hearing a commotion up front, went to investigate and saw a tall man holding a gun. She could not, however, make an identification.

### I.

■ Appellant alleges two errors, each of which he asserts requires reversal. The first involves the trial court's refusal to grant a motion to suppress the lineup and in-court identifications given by the robbery victim.[1]

A lineup was originally scheduled for June 25, 1973. At that time, however, the employee of the sandwich shop was told by the police that it would have to be postponed because the suspect (appellant) "was taller than any of the rest of the people in the lineup and they didn't want to put him in that lineup, because he would stand out too far. . . ." Consequently, a second

lineup was scheduled for July 5, 1973, at which time the employee was able to identify appellant as the perpetrator of the robbery. Appellant contends that this second lineup identification was unduly suggestive and should not have been suppressed along with the later in-court identification. The trial court found no undue suggestivity in the lineup and we agree.

We have examined the photograph of the lineup and find nothing to suggest that appellant was denied due process. No one man in the lineup stood out. Several were apparently of the same height or perhaps even taller than appellant. In addition, there were no other impermissible factors pointing to him as the man who committed the crime. Thus the identification can only be concluded to have been a product of the witness' recollection and not of suggestion by the police. The mere fact that the witness knew the suspect to be tall does not render her lineup identification constitutionally impermissible when there was nothing unduly suggestive in the lineup itself and when the witness' attention was not directed toward any specific person in the lineup.[2]

### II.

■ As his second ground for reversal, appellant contends that under the facts in this one-witness identification case, the trial court should have granted his motion for judgment of acquittal because of asserted discrepancies in the description of

---

1. Before trial appellant also contended that the photographic array was unduly suggestive, but after failing to produce evidence to justify this contention and after the trial court refused to suppress, appellant dropped that allegation on appeal.

2. Even if we were somehow to find the lineup unnecessarily suggestive, we still could not agree that the conviction would have to be reversed, for we find, as the trial court strongly implied, that there was a sufficient independent source for the witness' identification to justify the in-court identification.

*See Clemons v. United States*, 133 U.S.App. D.C. 27, 408 F.2d 1230 (1968) (en banc), *cert. denied*, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). After reading the record we agree with the court that

the testimony would support her picking this man independently, based on, according to her testimony, a full opportunity with proper lighting, et cetera, proper length of time, to view this man both from a front-on position and from a side view.

the defendant and his actual physical appearance, particularly in regard to his height. We do not agree.

The dangers inherent in identifications by one witness and the problems related thereto are for the trial court to resolve. *Smith v. United States,* D.C.App., 343 A.2d 40, 42 (1975) and *Crawley v. United States,* D.C.App., 320 A.2d 309, 311–12 (1974), quoting from *United States v. Levi,* 403 F.2d 380, 383 (4th Cir. 1968). Unlike the instant case, the court in *Crawley, supra,* was faced with an unusual set of circumstances including the fact that neither a lineup nor a photographic array was conducted and the complaining witness was unable at trial to identify the appellant. *See also* separate statements of Nebeker, J. and Yeagley, J. denying rehearing en banc, 325 A.2d 608, 609 (1974); and *Russell v. United States,* D.C.App., 348 A. 2d 299 (1975). Here the trial court noted that there had been some conflicting testimony as to the appearance of the defendant, but after examining the evidence concluded it would allow the case to go to the jury. We cannot say that this was error. The conflicting evidence was for the jury to resolve. Further we note that the identifying witness had observed the robbery under good lighting conditions, selected the appellant's photo from an array of 44 pictures a few minutes after the robbery and later identified him at a lineup.

It is axiomatic that when evaluating a motion for acquittal the trial court must view the evidence in the light most favorable to the government, "giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact". *United States v. Fench,* 152 U.S.App.D.C. 325, 333, 470 F.2d 1234, 1242 (1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); *Curley v. United States,* 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). At the time of the motion, the government need only have introduced enough evidence to sustain a conviction, that is,

> such evidence that reasonable persons *could* find guilt beyond reasonable doubt. It is not a requirement that the evidence *compel,* but only that it is *capable* of or sufficient to persuade the jury to reach a verdict of guilt by the requisite standard. [*Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967) (emphasis in original).]

We agree that there was sufficient evidence for the case to go to the jury. There being no other issues raised on appeal, the judgments appealed from are

*Affirmed.*