537 A.2d 206 (1988)
In the Matter of B.E.W., Appellant.
No. 86-1720.
District of Columbia Court of Appeals.
Argued January 12, 1988.
Decided February 17, 1988.
Lee H. Karlin, Washington, D.C., appointed by the court, for appellant.
Charlotte Brookins-Pruitt, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Acting Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.
Before FERREN and STEADMAN, Associate Judges, and REILLY, Senior Judge.
FERREN, Associate Judge:
The trial court, in an adjudication of delinquency, found B.E.W. guilty of unauthorized use of a motor vehicle, D.C.Code § 22-3815 (1987 Supp.). B.E.W. appeals alleging that the testimony of only one eyewitness was insufficient to support an adjudication of guilt. We affirm.
Evidence presented by the government shows that on February 17, 1986, Winifred C. Lewis' car disappeared after she left it in the parking lot of the Waterside Mall. She had not given anyone permission to use it and did not know B.E.W. The next day Sergeant David Daniel of the Metropolitan Police Department, while driving in a marked patrol car, spotted the lost vehicle near the intersection of 50th and Hayes Streets, N.E. He first noticed the driver when the car was moving "very slowly" into the intersection. Daniel was in the process of stopping at a stop sign as he watched the car drive by with one person in it in addition to the driver. Although it was misty, it was still daylight, and Daniel was able "to see [the driver's] face clearly" as the car drove by. Through the partially rolled-down window of the patrol car and the fully open window on the driver's side of the stolen car, Daniel could see that the driver had on a white T-shirt. He saw the car again two to four minutes later on the 5100 block of Sheriff Road, where the car was parked. Daniel drove slowly past it, scrutinizing the driver as both car windows were down. Daniel then turned his car around to pull up behind the parked car. Before he could do so, however, he saw the other driver leave the car, look in Daniel's direction, and flee down the street. Daniel first tried to follow him in his patrol car. While in his car, Daniel could see the driver and a passenger about 25 to 40 feet away through his closed window. Daniel testified that this was probably the worst opportunity he had to view the suspects. Believing the car was stolen, Daniel broadcast a lookout for "a young black male in a T-shirt." In the broadcast, he described the passenger of the vehicle as wearing a black jacket. Further examination of the car tended to confirm his belief that the car had been stolen.
*207 Officer Larry Hamlet responded to Daniel's broadcast. He noticed 16-year-old B.E.W. wearing a light colored T-shirt, which was unusually light clothing for the middle of February. This abberation prompted Hamlet to conclude that B.E.W. was the driver Daniel had described. Hamlet stopped B.E.W. at 5:00 p.m. on the 5100 block of Just Street, one block from Sheriff Road, and took him to the stolen car where Daniel positively identified him as the driver he had last seen five to ten minutes earlier. Daniel was not certain enough to identify as the passenger another person brought to him.
The trial court denied a defense motion for acquittal at the close of the government's evidence. B.E.W. testified. He denied he was in a car on the day in question and also denied wearing a light colored T-shirt at the time the police stopped him. He testified instead that he had been wearing a light colored blue T-shirt, and he gave an alternative account of his whereabouts. He asserted that he had been at Woodson High School gym at about 4:30 p.m. He then had left to walk to Roper High School, arriving at 5:00 p.m. Finding the school closed, he turned to go back to Woodson and ran into Officer Hamlet on his way. Carl Rice, a coach at Woodson, testified that he had seen B.E.W. at the Woodson gym between 4:00 p.m. and 4:30 or 4:40 p.m. but had not seen him at 5:00 p.m. On cross-examination, Rice testified that it took about two or three minutes to drive from Woodson to the 5100 block of Sheriff Road and no more than a minute from Sheriff Road to 50th and Hayes.
Finding B.E.W.'s testimony unbelievable, the court found him guilty of unauthorized use of a motor vehicle. It credited, instead, Sergeant Daniel's testimony because of the certainty of his identification. On appeal, B.E.W. alleges that the trial court erred in denying his motions for judgment of acquittal and in adjudicating him guilty. He contends that the adjudication lacked sufficient evidence because it was based on the testimony of a single eyewitness who had had an inadequate opportunity to observe the criminal, had given only a vague description of him, and whose sole pretrial identification was at a show-up.
Denial of a motion for judgment of acquittal is not reversible error unless "`there is no evidence upon which a reasonable person might fairly conclude guilt beyond a reasonable doubt.'" Reid v. United States, 466 A.2d 433, 434-35 (D.C.1983) (quoting Morrison v. United States, 417 A.2d 409, 412 (D.C.1980)). This test applies with equal weight to identification evidence as to other evidence. McClain v. United States, 460 A.2d 562, 567 (D.C.1983); Blango v. United States, 373 A.2d 885, 887 (D.C.1977). Relying on a single eyewitness does not by itself render the evidence insufficient. Daniel's testimony amply supports the court's conclusion that he had adequate opportunity to observe the driver of the stolen vehicle. We must give deference to the credibility assessments of the trier of fact. Franey v. United States, 382 A.2d 1019, 1022 (D.C.1978). Similarly, a lookout description lacking such factors as the height and weight of the suspect does not preclude a reasonable finding of guilt. Under the circumstances, a light colored T-shirt on a rainy, misty day in the middle of February can be a highly distinctive characteristic. Hence, such a description is not necessarily vague.
Furthermore, show-up identifications, while inherently suggestive, do not presumptively violate due process. In re F.G., 534 A.2d 297, 303 (D.C.1987). In Singletary v. United States, 383 A.2d 1064 (D.C. 1978), we noted:
[A] defendant is not denied due process of law unless, in the totality of the circumstances, the on-the-scene confrontation was unnecessarily suggestive and conducive to the substantial likelihood of irreparable misidentification. In considering the totality of the circumstances, an immediate on-the-scene confrontation has uniquely powerful indicia of reliability which more than counterbalance any suggestivity, absent special elements of unfairness. Furthermore, something more egregious than mere custodial status is required in order to establish such special unfairness. *208 Id. at 1068 (citations omitted). In evaluating the likelihood of misidentification, we must consider:
the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Here the cars passed each other twice, slowly, in close proximity, with their windows rolled down, while Sergeant Daniel watched attentively. His broadcast description of the driver's clothing closely resembled what B.E.W. wore when Officer Hamlet stopped him. In contrast with his uncertainty about his identification of the passenger, Daniel positively identified B.E.W. as the driver. The show-up took place within minutes and a few blocks of Daniel's last sighting. Thus, under the totality of the circumstances, the show-up identification was reliable and did not violate B.E.W.'s due process rights.
Admissibility of the show-up identification does not necessarily imply that a positive show-up identification alone is sufficient to support a conviction. Crawley v. United States, 320 A.2d 309 (D.C.), reh'g denied, 325 A.2d 608 (1974). Crawley, however, does not support B.E.W.'s contention here. In Crawley, the complainant positively identified defendant as the robber at a show-up identification, but, before that, he had given a description of the criminal that differed in almost all respects from the defendant's appearance. Further, the complainant in Crawley could not identify the defendant at trial. In light of these factors, we held that the show-up identification alone, regardless of how positive the complainant claimed to be, could not overcome the substantial likelihood of misidentification founded upon the significant discrepancy in description and the inability to make an in-court identification. Neither of these factors exists in the present case. There was no substantial difference between Daniel's description of the driver and B.E.W. when Hamlet stopped him. Daniel identified B.E.W. in court. Additionally, in Crawley, two alibi witnesses for the defense corroborated the defendant's testimony that he could not have been at the house of the complainant at the time alleged. Carl Rice corroborated B.E.W.'s account that he had been at the Woodson gym earlier that afternoon, but Rice's testimony does not preclude the possibility of B.E.W.'s driving at the locations at the times Daniel claimed.
In sum, the evidence viewed in the light most favorable to the government, Shelton v. United States, 505 A.2d 767, 769 (D.C. 1986), amply supports the trial court's judgment. D.C.Code § 22-3815(b) states that "[a] person commits the offense of unauthorized use of a motor vehicle ... if, without the consent of the owner, that person takes, uses, operates, or removes ... a motor vehicle ... for his or her own profit, use, or purpose." In this case, Lewis testified that she did not consent to B.E.W.'s use of her car, and Sergeant Daniel testified that he had seen B.E.W. operate it.
Affirmed.