**In re R.H.M., Appellant.**

**No. 90–FS–727.**

District of Columbia Court of Appeals.

Argued Jan. 12, 1993.
Decided Sept. 2, 1993.

---

Shirin Ikram, Potomac, MD, appointed by this court, for appellant.

Rosalyn Calbert Groce, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and SCHWELB, Associate Judges.

TERRY, Associate Judge.

This is one of those very rare cases in which we conclude that the evidence identifying the defendant as the person who committed the crime was insufficient to support a conviction—or, in this instance, an adjudication of delinquency.[1] Appellant, a juvenile, was found guilty of arson[2] and adjudicated delinquent after a two-day bench trial. We hold that the trial court erred in denying appellant's motion for judgment of acquittal, and thus we reverse the judgment of delinquency and remand the case with instructions to grant the motion.[3]

## I

Ruben Stancil, who lived with Cynthia Williams and her daughter Trina in an apartment on 14th Place, S.E., was alone in that apartment one night in May 1989 when he received two telephone calls shortly after midnight, calls which Mr. Stancil characterized as "threatening." A few minutes later, at about 1:00 a.m., Mr. Stancil heard glass breaking, ran to the kitchen, saw fire, and then heard what he thought were four or five gunshots. He immediately called the fire department, but before they arrived, he was able to extinguish the flames. Mr. Stancil at trial was not asked to, and did not, identify anyone as having started the fire or thrown anything through the window.[4]

At about the same time, Christopher Light, who lived in the same apartment building, was standing outside in front of the building when he saw two cars pull up and eight young men alight from them. Mr. Light then went back inside to his own

---

1. It is only the second such case since *Crawley v. United States*, 320 A.2d 309 (D.C.1974), decided almost twenty years ago. The first case after *Crawley* was *Beatty v. United States*, 544 A.2d 699 (D.C.1988). We reached a similar result in *In re L.D.O.*, 400 A.2d 1055 (D.C.1979), but only after holding that certain identification testimony should not have been admitted.

2. D.C.Code § 22–401 (1989).

3. Appellant also asserts that the delinquency petition should be dismissed because the government, in the course of its investigation, alleg-

edly violated Super.Ct.Juv.R. 105(f), which provides that "no person shall be permitted to interview a child held in [a shelter or detention] facility without the child's parents or attorney being present unless they have given written permission for the interview to be held without them." Because we reverse on other grounds, we do not decide this issue.

4. A fire department investigator later testified that the fire had been started by "ignition of a Molotov cocktail."

apartment. Looking out through the window, he saw several of the young men approach the door of the building, walk back to their cars, light "gas bombs," and then throw the bombs into the building through a window. These events occurred very quickly, and Mr. Light was able only to "glance" at the young men, whom he referred to at trial as "kids" or "dudes." They were all wearing sweatshirts with the hoods pulled up and tied tightly around their faces. Mr. Light noted that everything "happened very quickly," within "seconds," and that "all of them had sweat hoods ... dark complexioned, real black, and it was dark outside." Thus at trial he was unable to identify appellant as one of the eight "kids" he saw that night. Mr. Light also testified that it had "been a long time" since the incident and that he could not recall whether any of the persons he selected from a group of photographs which a detective had shown to him resembled anyone in the courtroom.[5]

Appellant became a suspect in the fire-bombing after the police interviewed Trina Williams, who told them that she knew appellant and had recently been harassed by him. Ms. Williams recounted to the police that shortly before the fire-bombing incident, she had been "jumped" by appellant and his friends while she was at a night club. Additionally, the day before the fire, Ms. Williams had been at a carnival with her mother, her younger brothers, and a friend, and appellant had started a fight with her. Trina's mother, Cynthia Williams, testified that she "hit one boy with a bottle, and grabbed Trina and ran, and everyone else was still fighting."

Appellant presented an alibi defense. Shortly before Trina Williams left the carnival, one of appellant's friends was stabbed by an unknown assailant. Appellant, according to the stab victim's mother,

had been at the hospital visiting her son at the time the fire-bombing occurred.

## II

■ In assessing the sufficiency of the evidence, this court is guided by numerous cases which reiterate well-settled principles of law. *See, e.g., Nelson v. United States,* 601 A.2d 582, 593 (D.C.1991); *Parker v. United States,* 601 A.2d 45, 51 (D.C.1991); *In re T.M.,* 577 A.2d 1149, 1151 (D.C.1990); *Irick v. United States,* 565 A.2d 26, 30 (D.C.1989). We view the evidence in the light most favorable to the government, "leaving to the trier of fact the resolution of credibility and the right to draw justifiable factual inferences." *Beatty v. United States,* 544 A.2d 699, 701 (D.C.1988) (citation omitted); *accord, Parker, supra,* 601 A.2d at 51. When the case is tried to a judge rather than a jury, we must give "full play to the right of the judge, as trier of fact, to determine credibility, weigh the evidence, and draw reasonable inferences." *In re T.M., supra,* 577 A.2d at 1151 (citations omitted). "Only if 'there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt' can we reverse for insufficiency of the evidence." *Raymond v. United States,* 396 A.2d 975, 978 (D.C.1979) (citation omitted). This test applies specifically to identification evidence, as it does to any other kind of evidence. *In re B.E.W.,* 537 A.2d 206, 207 (D.C.1988) (citing cases).

■ Appellant contends that Mr. Light's single out-of-court identification, when combined with other circumstances in this case, including Mr. Light's inability to identify appellant in court, is insufficient to support his adjudication of delinquency. We agree that the judgment should be reversed, but not for that reason. We con-

---

5. About four months after the crime, Mr. Light received a visit from Detective Richard Espinosa of the Metropolitan Police Arson Unit, who showed him an array of nine photographs. Mr. Light testified that he picked out three photographs because they "looked familiar to me" from seeing them on the night of the fire-bombing. The judge then asked him whether he saw "anyone in the courtroom now that you saw on

the night in question, in this case." Light replied, "Well, they had sweaters on, plus, it was dark out there." Later, when the prosecutor asked whether he could remember the faces of the young men he saw that night, Mr. Light said, "It was dark.... That's a long time ago, in May.... I can't do it." Mr. Light never identified appellant in court as one of those young men.

clude instead that the evidence at trial showed that Mr. Light did not even make an out-of-court identification. The only trial testimony concerning the viewing of the photographic array came from Mr. Light himself,[6] and that testimony, even when viewed in the light most favorable to the government,[7] established only that Mr. Light picked out three photographs, one of which depicted appellant, because they "looked familiar" from the night of the fire. At no time did Mr. Light say, in so many words, that appellant was one of the young men he saw outside his apartment building that night. Since Mr. Light did not identify appellant in court either, there was *no* evidence connecting appellant with the fire-bombing, and therefore he should have been acquitted.

 This court has repeatedly held that the identification testimony of a single eyewitness is sufficient to sustain a conviction. *E.g., Hill v. United States*, 541 A.2d 1285, 1287–1288 (D.C.1988); *In re B.E.W., supra*, 537 A.2d at 207; *see Lewis v. United States*, 567 A.2d 1326, 1331 n. 11 (D.C. 1989) ("We routinely sustain single-witness convictions"). So long as "a reasonable person could find the identification convincing beyond a reasonable doubt, given the surrounding circumstances," we will not find an identification insufficient to convict. *Beatty v. United States, supra*, 544 A.2d at 701 (citations omitted); *accord, Hill v. United States, supra*, 541 A.2d at 1287. When a single-witness identification is challenged on appeal, we will examine it with care, but ultimately our standard of review is the same one that we apply in all cases. *In re B.E.W., supra*, 537 A.2d at 207. In

*Hill*, for example, we upheld a drug conviction based on the testimony of a single undercover police officer, even though there was some dispute about whether the drug seller was or was not wearing glasses. We noted that the officer had "ample opportunity to observe the two men who sold him drugs; he testified, in particular, that he stood within 'a couple of feet' from Hill when the transaction took place on a 'well lit' street corner." 541 A.2d at 1287. Likewise, in *Anderson v. United States*, 364 A.2d 143 (D.C.1976), although we were troubled by conflicting evidence concerning the appearance of the defendant,[8] we concluded that, in light of all the evidence, which included an identification from an array of forty-four photographs and again at a lineup, that the trial court did not err in allowing the case to go to the jury.

 The government refers us to two cases in which convictions based solely on out-of-court identifications have been upheld, *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), and *Wilkerson v. United States*, 427 A.2d 923 (D.C.), *cert. denied*, 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981). In *Owens* the victim of an assault identified the defendant to an FBI agent one month after the crime, but thereafter he suffered a loss of memory and was unable to make any identification at trial. In *Wilkerson*, a rape case, neither the victim nor a neighbor who saw part of the crime through his window identified the defendant at trial, but both of them had done so earlier, the victim tentatively[9] and the neighbor positively. Evidence of their out-of-court identifications

---

6. Detective Espinosa testified at a pre-trial suppression hearing, but not at the trial. His testimony at the pre-trial hearing was never offered into evidence at trial or otherwise incorporated into the trial record; consequently, we cannot consider it in deciding whether the motion for judgment of acquittal was properly denied.

7. *See, e.g., Nelson v. United States, supra*, 601 A.2d at 593 (citing cases).

8. A police officer's report, based on the victim's description of the robber, said that the defendant was five feet seven inches tall and weighed 150 pounds, while the victim herself testified she told the officer that the defendant was at

least five feet nine inches or taller. The defendant was in fact six feet four inches tall. The officer testified that "it was quite possible he could have made a mistake in the descriptions...." *Anderson, supra*, 364 A.2d at 144.

9. A police officer testified that the victim said, "Yes, that's him. ... I think that's him.... I believe that's him." The victim testified that when the police showed the defendant to her as she sat in a police car, she said, "I wasn't sure. It looked like him.... I said, 'It looks like one of them.'" *Wilkerson, supra*, 427 A.2d at 924 n. 1.

was heard by the jury. *See also Rice v. United States*, 437 A.2d 582 (D.C.1981) (robbery victim's out-of-court identification admissible even though he was not asked at trial to make an in-court identification). But these cases do not help us here because, in each of them, there was an out-of-court identification which sufficed to prove the defendant's guilt. In the case at bar, however, all we have is a statement by Mr. Light—the only purported identifying witness—that the persons in the three photographs he selected "looked familiar" from the night of the crime. Saying that someone "looks familiar" is not an identification and will not suffice, without more, to prove guilt beyond a reasonable doubt.

We do not address appellant's contention that the out-of-court identification procedure was unduly suggestive. Even assuming that it was impeccable, we hold that the evidence was insufficient to sustain the adjudication of delinquency and that the motion for judgment of acquittal should have been granted. The judgment is therefore

*REVERSED.*