735 A.2d 957 (1999)
In re L.G.T., Appellant.
No. 97-FS-531.
District of Columbia Court of Appeals.
Submitted June 8, 1999.
Decided August 19, 1999.
*958 Geoffrey Harris, appointed by the court, was on the brief for appellant.
Jo Anne Robinson, Principal Deputy Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, Rosalyn Calbert Groce, Director, Policy and Appeals Branch, and Sidney R. Bixler, Assistant Corporation Counsel, were on the brief for appellee.
Before STEADMAN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.
STEADMAN, Associate Judge.
Appellant was found guilty in a juvenile proceeding of armed robbery and assault with a dangerous weapon, and was committed to the custody of the Department of Human Services on February 24, 1997. Appellant argues that the photo array used by the police, found by the trial court to be unduly suggestive, made the resulting identification insufficiently reliable to be introduced as evidence or to sustain the adjudication of delinquency. He also argues that the two charges merge. We affirm the adjudication, while vacating that portion of the judgment finding guilt for assault with a deadly weapon.

I.
Appellant approached and robbed the victim, a lawyer living on Capitol Hill, on April 24, 1996, while it was still light out. The victim was driving her car home, and appellant was riding a small pink bicycle. The victim took specific notice of appellant in her rear-view mirror as she surveyed her surroundings from her car. Though she looked at him only briefly, she focused on him enough to judge from his apparent age and his child-style bike that he appeared to pose no threat. When the victim parked moments later and emerged from her car, she was confronted by appellant, who demanded her bag and struggled over it briefly. Immediately after the victim released the bag appellant stabbed the victim in her side with an unknown object, presumably but not necessarily a knife of some sort. Appellant then sped away on his bicycle. The encounter, during which appellant and victim were within an arm's length of each other, lasted approximately seven seconds. The victim testified that in the encounter she was focused on appellant's face and eyes, that he did not look away or avoid eye contact but was very direct, and that she never took her eyes off him. Afterward, the victim walked across the street to her house. After about a minute, she noticed she was bleeding and *959 called 911. During that call, she gave a description of the perpetrator as a fourteen or fifteen year old boy with a normal, slight build and a large Afro, and asked for an ambulance.
The victim was first presented with a photo spread on May 16, 1996. At that time she selected two people who she thought might have been the robber at an earlier age,[1] but stated she was "not at all sure." Appellant's picture was not in that photo array. Six months later, a detective presented the victim with a photo of a lineup, and this time the victim identified the appellant without any question.[2] At trial, the victim also made a positive in court identification of the appellant.

II.
Appellant argues that the second photo, a lineup of seven individuals with Afros among whom, as the court found, appellant was the youngest and the only one without any facial hair, was unduly suggestive and that thus both the out of court and in court identifications by the victim were tainted and should have been excluded as evidence under the doctrine of Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Although the trial court did not find any leading behavior or intention on the part of the police during the identification process, the court agreed that the lineup photo itself was unduly suggestive in its formation.[3] However, in suppressing an identification, suggestivity is not the end of the inquiry. United States v. Walton, 411 A.2d 333, 337-38 (D.C.1979). The trial court found the victim's identification of appellant reliable despite the faulted lineup and, in an appropriate use of its discretion, permitted evidence of the identification. We accord considerable deference to a trial court's determination of reliability based on that court's greater opportunity to assess the witness. Morriss v. United States, 554 A.2d 784, 788 (D.C.1989); Henderson v. United States, 527 A.2d 1262, 1269 (D.C.1987).
The factors that must be judged in a reliability determination of an identification preceded by suggestive police procedure are outlined in Manson v. Brathwaite, supra, 432 U.S. at 114, 97 S.Ct. 2243 as follows:
the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.
In this case, the reliability of the victim's identification was supported by the fact that she was in close proximity to the robber during the incident, she focused on the robber's face, she gave an accurate and specific description to the police, and she felt a high degree of certainty about her *960 final identification. Additionally, she refrained from making misidentifications when given the opportunity to do so during the first police identification procedure. Further, the trial court found that the victim's in court identification of appellant derived from her independent recollection of the crime, and was not affected by the photo lineup.
There was some discrepancy between the initial age and height estimations given by the victim and appellant's actual age and height. In her 911 call, the victim first gave an age range of twelve to sixteen, and later narrowed her guess to fourteen or fifteen. Appellant was fifteen years and six months old at the time of the incident. The trial court found the victim's inability to state an age with greater precision to be inconsequential. The court further found that the difference between the victim's guess at a height of 5'8" and appellant's self-reported height of 6'1" at the time of trial was adequately explained by the victim, who only saw the boy in a crouched position on a small pink bicycle. The victim stated that she never ventured a guess as to his full standing height, and the court noted that the most critical element of the height description was the victim's awareness that her young attacker was taller than she, who stood at 5'6". Further, the victim repeated her description consistently on the 911 call, to police at her home, and again to officers at the hospital emergency room.
In short, the court derived from the victim's testimony that her identification was reliable based on the relevant Manson factors. Though the trial court evaluated the witness' credibility, such judgments are an allowable component of a reliability determination. Morriss v. United States, supra; Henderson v. United States, supra. After a review of the record we see no reason to disturb the court's decision.

III.
Nor do we find reason to reverse the resulting adjudication, especially in a bench trial where the court clearly laid out its reasoning for finding guilt. We apply the familiar and oft-repeated principles governing such review. See, e.g., Kennedy v. District of Columbia, 601 A.2d 2, 2-3 (D.C.1991); Parker v. United States, 601 A.2d 45, 51 (D.C.1991). Sufficiency of evidence is examined on appeal "in the light most favorable to sustaining the verdict." Jones v. United States, 716 A.2d 160, 161 (D.C.1998); McClain v. United States, 460 A.2d 562, 567 (D.C.1983). Furthermore our ability to review a court's findings of fact upon which a sufficiency determination is based is substantially limited, allowing reversal only when the finding is clearly erroneous. Poole v. United States, 630 A.2d 1109, 1117 (D.C.1993). The standard is particularly called for where "the finding largely revolves around concerns of credibility and demeanor." Safeway Stores, Inc. v. Buckmon, 652 A.2d 597, 603 (D.C. 1994). Such is the case here, where the court cited not only the victim's testimony, but also "her facial expressions and her hand expressions and her description" in his findings.[4]
The reliability of the identification also was corroborated independently to some degree by testimony from a detective that appellant, around the time the crime took place, matched the description given by the victim. In particular, appellant wore the very distinctive Afro haircut noted by the victim. While the appellant suggests that this independent evidence was an incorrect basis upon which to make a reliability ruling in the context of admissibility of the identification, the trial court was clearly entitled to take this evidence into account in assessing guilt.[5]
*961 We are not for a moment unmindful of the care that should be exercised with respect to eyewitness identifications of strangers. Nonetheless, "the issue is not whether this court might find reasonable doubt; rather, we can only determine that the evidence is insufficient if we conclude, as a matter of law, that no reasonable [trial judge], acting reasonably, could convict on the evidence presented." Parker, supra, 601 A.2d at 51(citation omitted). We cannot so conclude on the record here.

IV.
Appellant also argues that the two counts underlying his adjudication should merge because assault with a dangerous weapon is a lesser included offense of armed robbery. Whether two offenses merge is a question of law and thus is reviewed de novo by this court. Hagins v. United States, 639 A.2d 612, 617 (D.C. 1994). On the facts of the instant case, it is at least highly questionable whether the armed element of the robbery charge could be met unless the stabbing is considered part of the robbery. See Cooper v. United States, 368 A.2d 554, 557-58 (D.C. 1977) (armed element of burglary not met by proof that appellant had in his pocket at the time a pen knife, not a per se dangerous weapon).[6] We note also that the adjudication of delinquency remains the same whether based on one count or two, and the trial court indicated its disposition would not be affected.
We vacate the portion of the judgment finding guilt on a separate offense of assault with a dangerous weapon. In re T.H.B., 670 A.2d 895, 903 (D.C.1996). In all other respects, the adjudication of delinquency is affirmed.
SCHWELB, Associate Judge, concurring dubitante.
This appeal presents two different questions relating to the reliability of the complainant's identification of L.G.T. as the person who stabbed and robbed her. The trial judge having found that the photograph of the lineup from which the complainant selected L.G.T. was unduly suggestive,[1] the first issue is whether the identification was sufficiently reliable, notwithstanding the suggestive lineup, to support its admission into evidence. Although the point is arguable  it is hard to be sure that the flawed lineup did not "give rise to a very substantial likelihood of irreparable misidentification," Neil v. Biggers, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)  I do not believe that it was unreasonable for the judge to deny L.G.T.'s motion to suppress the identification evidence. I therefore agree that the admission of the pretrial identification was proper, and I will not address that issue further.
The second question presented is whether the identification of L.G.T. from the lineup, and the in-court identification that followed, were sufficiently reliable, notwithstanding the virtual lack of any corroboration, to support the adjudication of guilt. Admissibility and sufficiency are, of course, entirely different issues; an item *962 of evidence may be reliable enough to warrant its submission to the trier of fact for his or her consideration, but may still be insufficient, without more, to support a finding of guilt beyond a reasonable doubt. See, e.g., United States v. Hunter, 692 A.2d 1370, 1376 (D.C.1997). For the reasons stated below, I find the sufficiency issue very difficult. Nevertheless, I reluctantly vote to affirm.
The complainant identified L.G.T. from the unduly suggestive lineup photograph seven months after the assault and robbery. At that time, she told the detective, and stated in writing, that No. 6 in the lineup (L.G.T.) "very clearly looks like the man who stabbed me." (Emphasis added.) Although the complaining witness subsequently asserted that she was certain of her identification, her initial words are important because many people resemble each other, because witnesses tend to become more and more "certain" as the case progresses, especially if the police rely on their identifications,[2] and because the complainant made it quite clear during the course of her testimony that she recognized the critical difference between an assertion that a person "looks like" the assailant and a statement that he "is" the assailant. Significantly, the lineup photo did not include either of the young men who, the complainant had said five months earlier, "might be" the person who stabbed and robbed her. One wonders whether she would have identified L.G.T. as the robber if photographs of all three individuals had been presented to her simultaneously.
The identification on which the adjudication of guilt in this case was based involved a complete stranger whom the complainant had never seen before. She testified that at the time of the offense, she had observed her assailant for approximately two seconds through the side-view mirror of her moving automobile and for an estimated seven seconds while the robbery itself was in progress. The situation was obviously a stressful one. The complainant was initially unable to describe the attacker's clothing, and if L.G.T. in fact committed the crime, then she mis-estimated his height by five inches.[3]
This court and other courts have repeatedly recognized the unreliability of identifications of strangers made on the basis of brief observation under stressful conditions. See, e.g., Webster v. United States, 623 A.2d 1198, 1204 n. 15 (D.C. 1993); Crawley v. United States, 320 A.2d 309, 312 (D.C.1974); cf. United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); see also NATHAN R. SOBEL, EYEWITNESS IDENTIFICATION, LEGAL AND PRACTICAL PROBLEMS § 1.1, at 1.1-1.3 (2d ed.1998) (hereinafter SOBEL)[4] and authorities there cited. In the words of Judge Lumbard:
Centuries of experience in the administration of criminal justice have shown that convictions based solely on testimony that identifies a defendant previously unknown to the witness [are] highly suspect. Of all the various kinds of evidence it is the least reliable, especially where unsupported by corroborating evidence.
Jackson v. Fogg, 589 F.2d 108, 112 (2d Cir.1978). "[T]he very real danger of mistaken identification is a threat to justice." United States v. Greer, 176 U.S.App.D.C. *963 89, 94, 538 F.2d 437, 442 (1976) (citations and internal quotation marks omitted).
"Scientific evidence concerning the unreliability of eyewitness identification has continued to mount since the Wade trilogy." SOBEL, supra, § 1.1, at 1.2 & n. 7 (citing psychological and other studies).[5] In this case, for example, the prosecutor argued, and the trial judge effectively found, that the complainant's mental image of the robbery remained imprinted in her recollection. But "[c]ontrary to popular understanding, our eyes and memories do not operate like a camera on which events are accurately recorded subject to retrieval at any time, but in fact memory can be altered to a significant extent by information perceived after the fact." Id. § 1.1, at 1.2-1.3 (citing State v. Contreras, 674 P.2d 792, 801 (Alaska Ct.App.1983)).[6]
The trial judge relied heavily on the complainant's lack of doubt regarding her identification of L.G.T. The Supreme Court has held that the identifying witness' level of certainty is a legitimate factor in the reliability calculus. See Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Indeed, the contrary would be counter-intuitive, for "he is the one who did it" surely strikes one as more probative than "he may be the one." Nevertheless, the research indicates that there is little if any relationship between the expressed confidence of an eye-witness and the accuracy of the identification. SOBEL, supra, § 6.8, at 6.37 n. 2 (citations omitted). "[I]t is well recognized that the most positive eyewitness is not necessarily the most reliable." Crawley, supra, 320 A.2d at 312 (citations omitted). Indeed, "[s]ome studies have shown a negative correlation between professed certainty and accuracy, and `positive' has been defined as `mistaken at the top of one's voice."' Webster, supra, 623 A.2d at 1204 n. 15 (citation omitted). Moreover, the complainant's initial reaction to L.G.T.'s photograph in the unduly suggestive lineup was that L.G.T. "very clearly look[ed] like" her assailant. The assertions of certainty that he was the attacker came later.
Finally, the probative value of the complaining witness' in-court identification should be assessed in light of the suggestive character of the lineup photo, for
[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial.
Wade, supra, 388 U.S. at 229, 87 S.Ct. 1926 (citation and internal quotation marks omitted). Indeed "the influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor  perhaps it is responsible for more such errors than all other factors combined." Id. (citation and internal quotation marks omitted). The unduly suggestive lineup guided the complainant's attention to L.G.T., and there is substantial danger that it brought about her "positive" identifications.
In light of the foregoing considerations, I perceive a logical disconnect between, on the one hand, an essentially uncorroborated identification seven months after the fact, based on a brief and stressful period of observation and a seriously flawed lineup, and on the other hand, the requirement that guilt be proved beyond a reasonable doubt, i.e., to a moral certainty. I recognize that I am not the trial judge, but appellate judges also have a significant *964 substantive role to play. This court has explained that
while we are mindful that the record on review is "cold," we think it proper  and indeed necessary  for us to draw upon our own experience, value judgments, and common sense in determining whether the verdict reached was in keeping with the facts.
Crawley, supra, 320 A.2d at 312 (citation omitted). Because, as the Supreme Court has noted, eyewitness identification of strangers has led to the conviction and incarceration of many innocent defendants, routinely deferential review on the part of appellate courts risks further injustices in the future. It is important, in my view, for judges not only to be aware of the extensive case law explaining the problems with this type of testimony, but also to incorporate these authorities into their decision-making calculus.
Nevertheless, there are strong arguments for affirmance. First, the record shows that the trial judge gave careful and thoughtful consideration to the issues of fact and law presented, and that he decided them as fairly and conscientiously as he could. He heard the evidence, which included not only the testimony of the complainant, whom the judge quite reasonably found to be exceptionally believable, but also L.G.T., whom the judge expressly found not to be credible. Second, the complainant testified persuasively that she took her testimonial responsibility very seriously because, above all, she did not want to make a false accusation against an innocent person.[7] Third, we are required to view the record in the light most favorable to the District, id., and we may reverse the judgment only if no reasonable trier of fact could find guilt beyond a reasonable doubt. See In re T.M., 577 A.2d 1149, 1151 (D.C.1990). Although I apprehend that the judge may have accorded insufficient weight to the perils of uncorroborated eyewitness identification in cases such as this, he was obviously a reasonable and fair-minded arbiter. Fourth, the essential teaching of Manson and other Supreme Court decisions seems to be that, notwithstanding the problems with eyewitness identification of strangers following brief and stressful encounters, the ultimate decision should be left to the trier of fact. Fifth, the proposition on which my separate opinion is based  namely, that the admissibility of an identification does not establish its sufficiency to sustain a finding of guilt beyond a reasonable doubt  was not raised at all by counsel for L.G.T.[8] Finally, notwithstanding my misgivings about this case, and in spite of my apprehension that a doctrine which sustains findings of guilt on the type of evidence in this record may well invite unintentional miscarriages of justice in future cases, I find it difficult to articulate a consistent rule of law which would support reversal here without doing violence, Crawley notwithstanding, to the proper allocation of authority as between trial and appellate courts.[9] Accordingly, and with considerable reluctance, I concur in the judgment.
NOTES
[1] She testified that the pictures she selected were of considerably younger children, perhaps ten or eleven, so that one had to figure out what they might have looked like in three or four years.
[2] The witness made clear that the detective asked her for a positive identification: "He didn't say look like, he said is anyone in this picture the individual who stabbed you." The witness then continued: "I looked at the picture. I knew immediately. There was one individual who was in fact the individual who had stabbed me. But I wanted to take some time to make sure that that was the individual, and so I spent probably another half a minute, maybe, looking at the picture, maybe even a minute. And I identified the individual who, in my mind, there wasn't any doubt was the young man who had stabbed me . . . . [W]hen I saw the picture, I instantly recognized the eyes, the same pout on the face, the face construct." She said her degree of certainty of the identification was "hundred percent." In cross-examination, she acknowledged that her precise words to the officer at the time were that "Number six [appellant] looks very clearly like the man who stabbed me."
[3] The photograph itself was not included in the record transmitted to this court, so we proceed on the assumption of undue suggestivity.
[4] In finding the victim's testimony "very very compelling," the court noted the care with which she described events, her focus on events, her description and her repeated statements of concern about not inculpating an innocent person by a misidentification.
[5] We also note that no objection was made to Detective Johnson's rebuttal testimony at the motions hearing, and thus any inference that the court improperly used the testimony to determine admissibility would need to survive plain error review. Harris v. United States, 602 A.2d 154, 159 (D.C.1992). Here, the government made no reference to the detective's testimony in its argument on admissibility. Additionally, when the court summarized all the evidence that had been put forth, it acknowledged that the detective's testimony was of limited use. We therefore see no basis for finding plain error in the admissibility adjudication.
[6] While in theory, this might lead simply to eliminating the "armed" element of robbery and retaining the assault with a dangerous weapon as a separate offense, the government makes no specific argument for such a disposition and we therefore do not explore it further, particularly in the context of a juvenile adjudication for the reason stated.
[1] It appears that the other persons in the lineup were police officers considerably older that L.G.T.
[2] "Indeed, experience establishes that an uncertain identification becomes more and more positive at every stage of the proceeding through the trial itself." In re Dwayne W., 109 Daily Wash. L. Rptr.1901, 1906 n. 11 (Super.Ct.D.C.1981) (quoting NATHAN R. SOBEL, EYEWITNESS IDENTIFICATION, LEGAL AND PRACTICAL PROBLEMS 9 (1972)); see also Fredric D. Woocher, Note, Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification, 29 STAN. L. REV. 969, 985 (1977).
[3] The complaining witness explained that the assailant was on a small bicycle and that this made it difficult to estimate his height.
[4] This is the most recent edition of the treatise by Judge Sobel to which I refer in footnote 2.
[5] I note, however, that reliance on scientific writings poses an obvious problem, for the psychologist or other scientist cited by the court will not have been subject to cross-examination, and other experts may have different views.
[6] The Contreras opinion surveys, and quotes at length from, the scientific literature.
[7] The witness stated:

I wanted to make every effort to make sure that I didn't identify the wrong person. Somebody's life is at stake. I value that quite seriously.
The judge credited the complainant, and no reasonable person reading the transcript would doubt her honesty. The question is whether the fact that she honestly believed to be true was true in fact.
[8] Counsel's entire insufficiency argument in this court is that the identification was too unreliable to warrant its admission and that it therefore did not support the adjudication of guilt.
[9] But a rule leaving it all to the trier of fact is not satisfactory either.